**John W. FREEMAN, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 79–1624.**

United States District Court, D. South Carolina, Greenville Division.

Feb. 13, 1981.

Wyatt Saunders, Laurens, S. C., for plaintiff.

Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., for defendant.

## ORDER

BLATT, District Judge.

This matter is before the court, pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Secretary of Health, Education, and Welfare. The record includes a report and recommendation of the United States Magistrate made in accordance with the local rule of this District concerning reference of social security cases under 28 U.S.C. § 636(b)(1)(B). *In the Matter of: Social Security Cases* (Sept. 5, 1979) (local rule); *see, e. g., Weber v. Secretary of Health, Education and Welfare*, 503 F.2d 1049 (9th Cir. 1974), *aff'd sub nom., Mathew v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). As provided by 28 U.S.C. § 636(b), the court is under an obligation to make a *de novo* review of any portion of the magistrate's recommendation to which specific objection is made, *Orand v. United States*, 602 F.2d 207 (9th Cir. 1979); *United States v. Raddatz*, 592 F.2d 976 (7th Cir. 1979), and the court may accept, reject, or modify the recommendation, or the matter may be recommitted to the

magistrate with additional instructions. *See Mathew v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). "The district judge is free to follow [the magistrate's report] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew. The authority—and the responsibility—to make an informed, final determination . . . remains with the judge." *Id.* at 271, 96 S.Ct. at 554. Thus, while the level of scrutiny entailed by the district court's review of the report and recommendation of the magistrate depends on whether objections thereto have been filed, *e. g., Webb v. Califano*, 468 F.Supp. 825 (E.D.Cal.1979), in either case "the district judge is free, after review, to accept, reject or modify any of the magistrate's findings or recommendations." *United States ex rel. Henderson v. Brierley*, 468 F.2d 1193 (3d Cir. 1972). *See Bowman v. Bordenkircher*, 522 F.2d 209 (4th Cir. 1975). Both of the parties to the present action have submitted objections to certain portions of the magistrate's report.

On August 7, 1978, plaintiff filed an application for disability insurance benefits, which was denied by the Social Security Administration, both initially and upon reconsideration. A hearing, requested by plaintiff under 42 U.S.C. § 405(b), was conducted on May 3, 1979, and resulted in an adverse determination by the administrative law judge. That determination became the final decision of the Secretary of Health, Education, and Welfare when it was approved by the Appeals Council on June 29, 1979. It is from this decision that plaintiff seeks relief pursuant to 42 U.S.C. § 405(g).

After a careful review of the record, this court finds the magistrate's report to be an accurate summary of the facts in the instant case. Plaintiff was born February 21, 1937, and was forty-two (42) years of age at the time of the administrative hearing held on May 3, 1979. Transcript at 25. Although plaintiff completed the sixth grade and attended seventh grade for some time without completing that level, *id.* at 27–28, serious questions exist concerning both his literacy, *id.* at 28, 64, 67, and his ability to do simple arithmetic, *id.* at 28–29, 64. Plaintiff's work history consists primarily of employment in the textile industry as a loom technician and a weaver, *id.* at 30–33; he was also employed briefly as an appliance repairman and mover, a farm hand, and an hourly worker in a textile mill, *id.* at 153. His primary employment required constant walking and bending, frequent reaching, and the lifting of heavy objects. *Id.* at 128. In 1974, plaintiff was injured while working on a loom, *id.* at 36–39, 145, and the resulting impairment to his left leg was not alleviated by two hernia operations. *Id.* at 36–38, 145. Consequently, degeneration of his left hip, diagnosed as avascular necrosis with a subchondral fracture of the left femoral head, *id.* at 146, necessitated an arthroplastic procedure in June, 1975, for a prosthetic hip replacement. *Id.* at 38, 144. Plaintiff was unable to return to his previous work, *id.* at 41, and other attempts at gainful employment were also unsuccessful. *Id.* at 41–43.

The medical evidence in this case consists of various medical records and reports of Dr. C. Dayton Riddle, plaintiff's treating physician, *id.* at 138–46, 154, reports of telephone contacts with Dr. James R. Monroe, *id.* at 147, and Dr. J. A. White, *id.* at 135, a hearing evaluation from the Speech, Hearing, and Learning Center in Greenville, South Carolina, *id.* at 148, and statements made in the disability applications and during the administrative hearing by the plaintiff himself concerning his condition. Although there are conflicts in the record, the evidence establishes that plaintiff continues to suffer some impairment from the problems associated with his hip prosthesis. Dr. Riddle's reports indicate that while plaintiff is not "totally disabled," *id.* at 148, a fifty per cent disability of the left leg is present, *id.* at 140, 141, and that there is no explanation for his "moments of instability." *Id.* at 138. Dr. Monroe's report states that neither plaintiff's hip problem, his hypertension, nor his hearing loss would preclude him from employment in the textile industry. *Id.* at 137. Dr. White's report characterizes plaintiff's hip impairment as "slight"

and indicates that his hypertension is mild. *Id.* at 135. The audiologist's report reveals "[a] sloping sensori-neural loss of hearing to a severe level . . . bilaterally." *Id.* at 148. Plaintiff complains of extensive problems, including cramps, *id.* at 55, pain, *id.* at 55–56, 116, 121, 132, difficulty in walking more than a block, *id.* at 71, episodes of instability, *id.* at 56, 106, 123, 132, limited ability to stand or sit for over an hour, *id.* at 71–72, inability to squat or bend, *id.* at 72, and difficulty in understanding speech because of his hearing loss, *id.* at 78, 125. The administrative law judge noted at the hearing that plaintiff had "a definite limp to the left side, and his left foot seems to flare outward a little more than the right." *Id.* at 57.

After reviewing the record and the testimony elicited at the hearing, the administrative law judge made the following findings, which were subsequently approved by the Appeals Council.

1. The claimant met the special earnings requirements of the Act on January 21, 1978, the date he stated he became unable to work, and he continues to meet them through at least June 30, 1982.

2. The claimant has the following impairments: history of mild hypertension, bilateral sensori-neural loss of hearing with normal hearing bilaterally through the speech frequencies, and history of left hip joint replacement with occasional instability and good range of motion therein.

3. The claimant's impairments in combination, including pain, do not prevent him from performing work not requiring constant walking, frequent bending, or heavy lifting.

4. The claimant is unable to perform his past relevant work as a loom fixer and textile weaver, which required constant standing, frequent bending, and lifting of heavy tools.

5. The claimant has the residual functional capacity for sedentary work as defined in section 404.1510(b) of Subpart P, Regulations No. 4.

6. The claimant is 42 years old and is defined as a "younger individual."

7. The claimant has a seventh grade formal education which is defined as "limited."

8. The claimant's work as a loom fixer and weaver imparted skills that are transferable to work other than that previously performed.

9. Under Regulation 404.1513 and Rule 201.26, Table No. L of Appendix 2, Subpart P, Regulations No. 4, it is my conclusion that the claimant, considering his maximum sustained work capability, age, education, and work experience, is "not disabled."

10. The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time up to May 3, 1979, the date of the hearing herein.

*Id.* at 12–13. These findings constitute the final decision of the Secretary of Health, Education, and Welfare. *E. g., Baker v. Gardner*, 362 F.2d 864 (3d Cir. 1966); *Capaldi v. Weinberger*, 391 F.Supp. 502 (E.D.Pa. 1975); *Maudlin v. Celebrezze*, 260 F.Supp. 287 (D.S.C.1966).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of that Act provides: "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). *E. g., Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va.1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Secretary. *E. g., Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.' " *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

Cir. 1972). However, as noted by Judge Soboleff in *Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971). *E. g., Thomas v. Celebrezze*, 331 F.2d. 541 (4th Cir. 1964).

■ Under the Social Security Act, plaintiff's eligibility for the benefits he is seeking hinges on whether he "is under a disability . . . ." 42 U.S.C. § 423(a)(1)(D). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). See 20 C.F.R. § 404.1501(a)(1)(i). Of course, the burden is on the claimant to establish such disability. *E. g., Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). A claimant may establish a *prima facie* case of disability based solely upon medical evidence, 20 C.F.R. § 404.1502(a), by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1504(a)(2).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as the result of physical or mental impairments. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Since this approach is premised on the claimant's inability to resolve the question solely on medical considerations under 20 C.F.R. §§ 404.1502(a), 404.1504(a)(1), (2), and Appendix 1, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." *Id.*

§ 404.1502(b). These factors include the individual's "residual functional capacity," *id.* § 404.1505, age, *id.* § 404.1506, education, *id.* § 404.1507, work experience, *id.* § 404.-1508, and the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1509. If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it must be determined whether he can do some other type of work, taking into account the remaining vocational factors. *Id.* § 404.1505(f). The interrelation of these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1503, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether he suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from performing some other available work. Since the Secretary found that plaintiff here demonstrated that he suffered from certain physical impairments and that, although the requirements of 20 C.F.R. Subpart P, App. 1 were not met or equalled, these impairments prevented him from returning to his former employment, Transcript at 9, 12, plaintiff has advanced a *prima facie* case of disability. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). It is therefore incumbent upon the Secretary to rebut this *prima facie* case by establishing that the nature of plaintiff's impairments, in light of his age, education, and vocational experience, does not prevent him from performing some other type of work, and that such alternative employment actually exists in the national economy. *Id.* The Secretary's findings on these issues are at the heart of the present controversy.

■ The Secretary concluded that the plaintiff here had a residual functional capacity for sedentary work as defined in 20 C.F.R. § 404.1510(b). Transcript at 12. To the extent that this conclusion is based on plaintiff's physical capacities (*i. e.,* his

strength and exertional capabilities as defined in 20 C.F.R. § 404.1505(b)), it is supported by substantial evidence; that is to say, the Secretary's decision that plaintiff's *exertional limitations* do not prevent him from performing sedentary work is supported by substantial evidence. However, the assessment of residual functional capacity under 20 C.F.R. § 404.1505 is broader than merely exertional capabilities. When the individual also exhibits non-exertional limitations, such as mental or sensory impairments, "the residual functional capacity must be assessed in terms of the degree of any additional narrowing of the individual's work-related capabilities." *Id.* § 404.1505(d). Plaintiff's hearing loss, illiteracy, and severely limited arithmetical and counting skills may constitute non-exertional limitations that should be taken into account in assessing his residual functional capacity. The total absence of evidence and administrative findings on this issue constitutes a failure to comply with the applicable regulatory requirements, invalidating the Secretary's assessment of residual functional capacity, and that finding is, therefore, based on an erroneous legal standard. A finding predicated on an erroneous interpretation of the applicable legal standard cannot stand. *E. g., Conley v. Ribicoff,* 294 F.2d 190 (9th Cir. 1961). "The facts must be evaluated by the administrator in light of the correct legal standards to entitle administrative findings to the insulation of the substantial evidence test." *Ferran v. Fleming,* 293 F.2d 568, 571 (5th Cir. 1961). *E. g., Branham v. Gardner,* 383 F.2d 614 (6th Cir. 1967). Furthermore, failure to apply appropriate regulatory provisions may constitute utilization of an erroneous legal standard. *See Flake v. Gardner,* 399 F.2d 532 (9th Cir. 1968); *Hawkins v. Celebrezze,* 210 F.Supp. 341 (W.D.Ark. 1962). In determining residual functional capacity under 20 C.F.R. § 404.1505, the Secretary must not only gauge plaintiff's physical capacities according to the exertional requirements for sedentary, light, medium, heavy, and very heavy work set forth in 20 C.F.R. § 404.1510, *see id.* § 404.1505(b), but the Secretary must also decide whether any non-exertional limitations are present and, if so, whether those limitations result in "*additional* narrowing of the individual's work-related capabilities" beyond the boundaries demarcated by his physical capacity and exertional limitations. *Id.* § 404.1505(d) (emphasis added); *see id.,* Subpart P, App. 2, § 200.00(e)(2). This determination was not made by the administrative law judge and is not reflected in his findings, Transcript at 12–13, and the record does not contain sufficient evidence to resolve the question. The issue must, therefore, be remanded to the Secretary for additional consideration since finding number (5) of the hearing decision is based on an analysis of facts under an erroneous legal standard.

The Secretary also concluded, under 20 C.F.R. § 404.1507, that plaintiff's education was "limited." Transcript at 12. This conclusion is wholly erroneous and is not based on substantial evidence.

Limited education refers to competence in reasoning, arithmetic, and language skills which, although more than that which is generally required to carry out the duties of unskilled work, does not provide the individual with the educational qualifications necessary to perform the majority of more complex job duties involved in semi-skilled or skilled jobs. Absent evidence to the contrary, a seventh grade through the eleventh grade level of formal education is considered a limited education.

20 C.F.R. § 404.1507(d). Not only did plaintiff never complete the seventh grade, Transcript at 27–28, but the record also reflects evidence of his functional illiteracy, *id.* at 28, 64, 67, and his limited ability to do simple arithmetic or to count, *id.* at 28–29, 64. Clearly, plaintiff's educational level does not fall within the definition of limited education contained in 20 C.F.R. § 404.-1507(d); his educational level is "marginal" at best and serious questions exist concerning his basic literacy. *Id.* § 404.1507(b), (c). Therefore, the Secretary's finding number (7) of the hearing decision that plaintiff's education can be characterized as "limited" is not supported by substantial evidence.

■ The Secretary also concluded, under 20 C.F.R. § 404.1511(e), that plaintiff's prior employment experience imparted to him transferable skills. Transcript at 12. The hearing decision indicates that his previous employment as a loom technician was "semi-skilled" work. *Id.* at 11. See 20 C.F.R. § 404.1511(c). While plaintiff's former work may have been semi-skilled, the record is totally devoid of evidence on the issue of transferability.

> An individual is considered to have transferable skills when the skilled or semi-skilled work functions which he or she has demonstrated in his or her past work can be applied to meet the requirements of skilled or semi-skilled work functions of other jobs or kinds of work. Transferability depends largely on the similarity of occupationally significant work functions among jobs. Transferability is most probable and meaningful among jobs in which the same or a lesser degree of skill is required; and the same or similar tools and machines are used; and the same are [sic] similar raw materials, products, processes, or services are involved. There are degrees of transferability ranging from a close approximation of work functions involving all three factors to only remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary to warrant the inference of transferability. Where an individual's work skills are so specialized or have been acquired in such a limited vocational setting that they are not readily usable in other industries, jobs and work environments, they are not transferable·and the individual may be considered as if he or she is unskilled.

*Id.* § 404.1511(e). The only evidence in the record even remotely pertinent to this issue is a "Vocational Profile" form, which suggests that examples of "other relevant work" for plaintiff include "needle setter," "coil winder II," and "capacitor assembler." Transcript at 133. This bald assertion is unquestionably insufficient to establish the requisite factual predicate for transferability of job skills under 20 C.F.R. § 404.1511(e). *See Taylor v. Weinberger,* 512 F.2d 664, 667–68 (4th Cir. 1975). It should also be noted that the record provides somewhat precarious·support for the conclusion that plaintiff's previous employment was "semi-skilled" under 20 C.F.R. § 404.1511(c). Transcript at 127–32. Therefore, finding number (8) of the hearing decision that plaintiff's prior employment imparted transferable skills does not conform to the applicable regulatory standard and is not supported by substantial evidence.

The Secretary used the findings concerning the vocational factors, including finding numbers (5), (7), and (8) of the hearing decision, to reach the final decision on the question of disability under the "Medical-Vocational Guidelines" contained in Appendix 2 of Subpart P. By using the appropriate rule from Table Nos. 1–4 of Appendix 2,

> [w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled. However, ... [w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled.

20 C.F.R. Subpart P, App. 2, § 200.00(a). Since three of the findings of fact on which this determination was·based cannot withstand judicial scrutiny, the conclusion directed by Rule 201.26 of Appendix 2, and contained in finding number (9) of the hearing report, is unsupported by substantial evidence and, by its very terms, cannot be applied. *Id.*

■ In addition to the factual inapplicability of the Medical-Vocational Guidelines contained in Appendix 2, the Secretary's use of those guidelines raises another important issue. The guidelines, which were first published on November 28, 1978, 43 Fed.Reg. 55,366 (1978), and which became effective on February 26, 1979, pursuant to the Secretary's authority under 42 U.S.C. § 405(a), are a distillation of the Secretary's

vocational expertise. The rules were designed to dispense with the need for vocational expert testimony, *see Taylor v. Weinberger*, 512 F.2d 664, 668 (4th Cir. 1975), by consolidating and elaborating "long standing medical-vocational evaluation policies for adjudicating disability claims in which an individual's age, education, and work experience must be considered in addition to medical condition." 43 Fed.Reg. 55,349 (1978). These guidelines, however, attempt to go even farther and establish the existence of certain categories of jobs in the national economy, as required by the regulatory and decisional law, 20 C.F.R. § 404.-1509; *Taylor v. Weinberger*, 512 F.2d 664, 668 (1975), through the mechanism of administrative notice. *E. g.*, 20 C.F.R. Subpart P, App. 2, § 201.00(a).

> But while this and other circuits have agreed that the Secretary may administratively notice the *existence* of such jobs in the economy [*e. g., Reynolds v. Richardson*, No. 71–2031, CCH Unemployment Rep., Fed. ¶ 16,842 (4th Cir. 1972); *Chavies v. Finch*, 443 F.2d 356 (9th Cir. 1971)], facts pertaining to the capacity of a specific individual can be supplied only by particularized proof. *See Hernandez v. Weinberger, supra* [493 F.2d 1120 (1st Cir. 1974)]; 2 K. Davis, Administrative Law § 15.03 at 353 and § 15.10 at 403 (1958). To allow the Secretary to "notice" a fact that is both complex and disputed would undermine an explicit congressional direction to adjudicate disability claims on an individual case-by-case basis.

*Taylor v. Weinberger*, 512 F.2d 664, 668 (4th Cir. 1975) (emphasis in original). Thus, although the Secretary has taken administrative notice of certain sedentary jobs available in the national economy, 20 C.F.R. Subpart P, App. 2, § 201.00(a), the adaptability of a particular individual to that category of employment may depend on more than exertional limitations, as previously discussed. *See id.* § 200.00(e)(2). In other words, non-exertional limitations may further restrict the type of work an individual is able to perform beyond the scope of his exertional limitations. *Id.; id.* at § 404.-1505(d). In such a situation, the adminis-

trative notice of a category of employment based solely on exertional limitations does not meet the "particularized proof" requirement of *Taylor v. Weinberger*, and vocational expert testimony would seem to be warranted. While this court does not contest the Secretary's authority to take administrative notice of the availability of various categories of employment when only exertional limitations are present, *see e. g., Jones v. Harris*, No. 3–79–487 (E.D. Tenn. March 18, 1980); *Brown v. Secretary of Health, Education, and Welfare*, No. 972347 (E.D.Mich. March 10, 1980), or under other unusual circumstances, *see McLamore v. Weinberger*, 538 F.2d 572 (4th Cir. 1976), this authority does not eliminate the necessity of "particularized proof" in other circumstances. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975).

Therefore, after careful review of the record according to the applicable standard of scrutiny, this court finds the magistrate's report to be an accurate and well-reasoned analysis of the case, and that report is hereby incorporated into this order by specific reference thereto. For the foregoing reasons, the cause herein, insofar as the findings are based on an erroneous legal standard or are not supported by substantial evidence, is remanded to the Secretary for additional consideration not inconsistent with this opinion.

AND IT IS SO ORDERED.