Sonia A. WANDER

v.

Richard S. SCHWEIKER,[1] Secretary of the Department of Health and Human Services.

Civ. A. No. M–78–2314.

United States District Court,
D. Maryland.

Sept. 25, 1981.

---

**24.** Paper Nos. 11 and 16.

**1.** Richard S. Schweiker has succeeded to the office of Secretary and has been substituted as the defendant. Rule 25(d)(1), Fed.R.Civ.P.

David E. Furrer, Baltimore, Md., for plaintiff.

J. Frederick Motz, U. S. Atty. D. Md., and Glenda G. Gordon, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Sonia A. Wander, brought this action on November 20, 1978, to obtain judicial review of a final decision of the Secretary of the Department of Health and Human Services (Secretary) denying her claim for disability insurance benefits. 42 U.S.C. § 405(g).

The plaintiff filed an application for disability insurance benefits on August 18, 1976, alleging that she became unable to work on January 2, 1976 (Tr. 58–61).[2] The plaintiff's application was denied initially (Tr. 64–65), and again denied upon reconsideration (Tr. 69–70). The plaintiff waived an oral hearing, and her case was considered *de novo* by an administrative law judge (ALJ). On June 16, 1978, the ALJ issued a decision recommending that benefits be denied (Tr. 21–33). The ALJ was of the opinion that the plaintiff's impairments could not be expected to last at least twelve months, and that she was able to perform her prior work (Tr. 32–33).

On July 18, 1979, this court remanded the plaintiff's case to the Secretary for the taking of additional evidence.[3] On September 28, 1979, the Appeals Council remanded the case to a new ALJ for a supplemental hearing. After the hearing, at which the plaintiff testified and was represented by counsel, the ALJ rendered a decision recommending a finding that the plaintiff was not disabled within the meaning of the Act. (Tr. 190–201). The ALJ's decision was approved by the Appeals Council on August 20, 1980, and became the final decision of

---

2. The initial record filed by the Secretary is docketed in this case as Paper No. 5. The supplemental record is docketed as Paper No. 9. Since the pages of the administrative record are numbered sequentially, all references to the record below will be to transcript page number.

3. Paper No. 7.

the Secretary (Tr. 188–89). On April 30, 1981, the court granted the plaintiff's motion to reopen this case,[4] and both parties have now moved for summary judgment.[5]

## I. Summary of the Evidence

The plaintiff was born on August 23, 1928, and has completed the twelfth grade (Tr. 232, 234). She alleges a disability as of January 2, 1976, at age 47, due to back problems and an inability to sit for long periods of time (Tr. 58–61).

Prior to January of 1976, the plaintiff had worked for some 22 years as a manicurist. She had received special training for this type of work (Tr. 234). Although she was often self-employed, the plaintiff always worked out of a beauty shop, which handled her appointments (Tr. 234–35). The plaintiff did handle her own financial records but did not employ or supervise other persons (Tr. 235–36). The plaintiff also assisted her husband, on a part-time basis, in running a teen counseling program under the auspices of the Baltimore County Department of Recreation (Tr. 236–41). Although the plaintiff had no formal training for such work, she counseled teens about drug abuse, arranged for dances and skating trips, and other similar recreational activities (Tr. 238–39). She and her husband also filled out reports for the county authorities (Tr. 240).

On January 9, 1976, the plaintiff was admitted to the Baltimore County General Hospital because of increasingly severe pain in her lower back and right leg, which did not respond to analgesics (Tr. 90). In addition to treatment by pelvic traction and valium (Tr. 91, 93–94), the plaintiff underwent the excision of breast masses due to bilateral fibrocystic disease (Tr. 99). A lumbar mylogram revealed moderate hypertrophic degenerative arthritic changes in the lower lumbar spine and a narrowing of the disc space of the L4–L5 and L5–S1 areas (Tr. 89, 91). Other studies were within normal limits (Tr. 90–91, 93). The discharge diagnosis indicated atypical radicu-

lar pain, possible lumbar disc herniation, exogenous obesity, and a probable personality disorder (Tr. 92). The consulting physician felt that the plaintiff was not a candidate for surgical intervention (Tr. 94), and she was discharged, at her request, on January 28, 1976 (Tr. 91).

On February 3, 1976, the plaintiff was examined by Dr. Chhabi Bhushan, a neurologist. According to Dr. Bhushan, "[b]ecause of extreme degree of pain, quite excruciating in nature, the examination was somewhat limited in certain aspects." (Tr. 101). While some of the plaintiff's movement functions were within normal limits, the straight leg raising test was positive bilaterally approximately 45° off of the table. In addition, the plaintiff walked with a marked limp bilaterally, and could not sit even for a moment because of pain (Tr. 101). There was also a significant tenderness in the L5 spine and lumbosacral junction, although she could stand on both her toes and heels (Tr. 101).

On February 5, 1976, the plaintiff was admitted to the Sinai Hospital of Baltimore (Tr. 103–14). She underwent a bilateral lumbar laminotomy, a right lumbar laminotomy, exploration and excision of a herniated disc, and a bilateral rhizotomy (Tr. 108–09, 112). She was also treated for an allergic rash (Tr. 115, 117), and was discharged on February 14, 1976.

The plaintiff was examined by Dr. Bhushan on March 4, 1976, who reported that she was recovering well from the surgical procedure, although experiencing some pain and movement restrictions. Regular and intensive physical therapy was prescribed (Tr. 122–23).

The plaintiff was reexamined by Dr. Bhushan on April 13, 1976. Although her back condition was improving, she had been experiencing pain, numbness, and parathesias in her left hand. The pain frequently awakened her during the night, and often involved the upper left extremity as well. Various studies were ordered (Tr. 120–21, 168).

---

**4.** Paper No. 8.

**5.** Paper Nos. 11 and 12.

The plaintiff was again examined by Dr. Bhushan on June 15, 1976. He reported that the plaintiff had been following his instructions regarding therapy, had movement within normal limits, and was making an excellent recovery. She had developed neurodermatitis, however, due to stress from family problems. Dr. Bhushan concluded by stating "[a]s far as her cervical spine is concerned we know now that she does have degenerative changes and disc disease at two levels but as long as it is asymptomatic I am not going to do anything about it." (Tr. 119).

During May, June and July of 1976, the plaintiff was treated for eczematoid dermatitis of the face, breast, buttocks, back, and extremities. The condition improved gradually with medication, and the treating physician did not feel that the plaintiff's allergic condition would last twelve months (Tr. 126–31).

The plaintiff returned to Dr. Bhushan on September 30, 1976, complaining of pain across the lower back region. Dr. Bhushan was of the opinion that because of the plaintiff's extensive surgery she would never be able to sit for any length of time, notwithstanding her good surgical recovery. He considered the plaintiff to be totally disabled from performing manicuring work, and to be 35 to 40% disabled on a regular basis (Tr. 132–33).

The plaintiff was readmitted to the Sinai Hospital on March 1, 1977, because of problems with her left hand. These difficulties were first diagnosed by Dr. Bhushan in April of 1976. She underwent a carpal tunnel decompression and neurolysis of the median nerve. The plaintiff was also treated with cervical traction for her back condition. She was discharged on March 18, 1977 (Tr. 168).

The plaintiff was hospitalized at the Baltimore County Hospital from October 16, 1977, to November 5, 1977, complaining of recurrent pain in the left side of her chest radiating down her upper left arm (Tr. 157–58). After controlling her pain with intramuscular Demerol, the plaintiff was moved from the coronary care unit to a regular bed. Severe left precordial pain continued, however, requiring treatment with intramuscular Demerol and Nitrol paste (Tr. 155). The plaintiff was diagnosed as having arteriosclerotic cardiovascular disease with acute myocardial infarction (Tr. 156). Upon her discharge on November 5, 1977, the plaintiff was taking Inderol, Nitrol paste and Nitrostat.

The plaintiff was admitted to the Sinai Hospital on November 16, 1977, for Heparin therapy for left popliteal vein phlebitis, and treatment of pulmonary emboli and acute cardiovascular disease (Tr. 138–42). After studies and treatment for pain, the plaintiff was discharged on November 29, 1977.

The plaintiff came under the care of Dr. Stanley Steinbach, an internist, on September 23, 1977. In a report dated February 10, 1978, Dr. Steinbach stated that after consultation with a cardiologist and a vascular surgeon, it was determined that the plaintiff had a single vessel coronary artery disease with a high grade proximal left anterior descending stenosis. If the plaintiff's pain continued despite drug and symptomatic therapy, it was recommended that she undergo coronary bypass surgery (Tr. 165–66).

On February 15, 1977, Dr. Bhushan reported that the plaintiff had at least a thirty-percent disability of the lumbar spine (Tr. 168).

The plaintiff was hospitalized at the Johns Hopkins Hospital from March 1, 1978 to March 14, 1978, where she underwent a coronary bypass procedure (Tr. 183). Dr. Vincent Gott, Cardiac Surgeon-in-Charge, reported that the plaintiff had experienced increasing angina over the past year, and that a cardiac catheterization demonstrated a 95% block in the proximal portion of the left anterior descending artery (Tr. 172). After surgery, the plaintiff was continued on heart medication, although her coronary outlook was good (Tr. 173). Dr. Gott was of the opinion that the plaintiff should be able to engage in her normal activities by August 1, 1978 (Tr. 185).

The plaintiff was again hospitalized at Sinai from November 1, 1978 to November 9, 1978, with "crushing retrosternal left precordial chest pain with radiation to the shoulder and down to the left arm." (Tr. 282). Studies showed that this pain was not anginal but was due to "musculoskeletal problems, exacerbated by home tension and a histronic personality." (Tr. 283).

The plaintiff was readmitted to the Sinai Hospital from January 1, 1979, to January 27, 1979, because of pain in her left leg. A physical examination evidenced a positive straight leg test and tenderness over the calf and thigh. X-rays of the plaintiff's lumbosacral spine showed changes compatible with degenerative arthritis and degenerative disc disease, with changes at the L3–L4 level with further narrowing at the vertebral body level anteriorly, and grade I spondyolisthesis of the L3 forward on the L4 region. X-rays of the left knee showed minimal degenerative changes. After bedrest, physical therapy, and drug treatment, the plaintiff improved symptomatically. The concluding diagnosis included arachnoiditis, degenerative spondylosis with sciatic syndrome, post-coronary bypass status, migraine, hyperlipidemia, and depressive reaction (Tr. 284–85).

The plaintiff was hospitalized at Sinai from February 18, 1979 to February 25, 1979, because she had suffered three syncopal episodes in less than twenty-four hours. She complained of dizziness, which became worse when she stood. After blood transfusions and medication her condition improved. Her discharge diagnosis was acute hemorrhagic gastritis of the antrum with multiple superimposed erosions and ulcerations, arteriosclerotic cardiovascular disease, and arachnoiditis (Tr. 286–87).

Dr. Steinbach, the plaintiff's treating physician, reported on October 18, 1979, that the plaintiff was permanently and totally disabled, and that she could not work. He stated that the plaintiff suffered from severe musculoskeletal pain, that she continued to have severe sciatic syndrome, required a walking cane, and suffered from recurrent gastritis with frequent nausea.

Dr. Steinbach indicated that her cardiac symptoms were being controlled by medication, and that her left thumb and finger joints were being treated for arthritis and "snapping finger." (Tr. 288).

A medical report by Dr. William L. Smulyan, an orthopedist (Tr. 294), states that the plaintiff was hospitalized from January 22, 1980, through January 25, 1980, because of stenosing tenosynovitis of the extensor pollicis brevis, abductor pollicis of the left thumb and of the flexor tendons of the left thumb, index, and middle fingers. The plaintiff underwent a tendon sheath release procedure without complications (Tr. 292).

On February 18, 1980, Dr. Smulyan stated that the plaintiff's hand incisions had healed, and that there was "supple" motion in her hands. He indicated that the plaintiff would be allowed activity "as tolerated" (Tr. 293).

The plaintiff testified at the hearing of December 5, 1979, that she could walk two to three blocks, stand for ten minutes, sit for fifteen to twenty minutes, occasionally drive a car, and accompany her husband when he goes shopping (Tr. 243–46, 251, 264, 266). She stated that she usually rises at 9:00 a. m., takes a hot shower, and drinks coffee. Her other activities include visiting with friends, going for a short walk, and having her hair done once a week. The plaintiff retires for the evening at approximately 10:00 P.M. (Tr. 247–48). The plaintiff testified to constant pain in her lower back and right leg. She described the pain as constant and occasionally severe. The plaintiff also testified to problems with and pain in her hands (Tr. 245, 252–54). The plaintiff does not sleep well at night, and requires sleeping pills (Tr. 249). She suffers from periodic depression because her daily activities are so restricted (Tr. 256–57). The plaintiff's current medications include Tylenol and Inderal, from which she obtains some relief for a few hours (Tr. 251–52, 265, 270). Certain medication has been eliminated due to her gastric condition (Tr. 261).

The plaintiff's husband testified at the administrative hearing that he prepares all

of the meals, does all of the household cleaning, and does all of the shopping (Tr. 273–74). He stated that the plaintiff cannot use her hands, that he must help her dress, and that he does almost all of the driving (Tr. 274–77). The plaintiff's husband has been doing such work since 1976 (Tr. 275).

## II. Discussion

■ The issue before the court is whether the Secretary's decision to deny disability insurance benefits is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In making such a determination, the court must "closely scrutinize the entire record," *Kesling v. Secretary of Health and Human Services*, 491 F.Supp. 569, 572 (N.D.W.Va.1980), to ensure that the Secretary has applied the correct legal standards, *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980), and has reached his conclusions based on adequate evidence. *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Further, the Secretary, or his delegate the ALJ, must "indicate explicitly that all relevant evidence has been weighed and its weight," *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979), in order for a reviewing court to find that the decision is supported by substantial evidence. *Myers v. Califano*, 611 F.2d at 983. It should also be noted that the ALJ is required to inquire fully into each issue, *see* 20 C.F.R. §§ 404.924(a), 404.927 (1980), and is held to a high standard in discharging this factfinding requirement. *See, e. g., Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980); *Bryant v. Harris*, 494 F.Supp. 932, 935 (D.S.C.1980).

■ It is well settled in this Circuit that the claimant bears the initial burden to establish (1) the existence of a medically determinable physical or mental impairment, and (2) that the impairment renders the claimant incapable of engaging in his usual line of work. *See, e. g., Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Once the claimant makes

such a showing, the burden shifts to the Secretary to go "forward with substantial evidence to establish that [the] claimant ha[s] sufficient residual capacity to engage in a specific job which exists in the national economy." *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). *See Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

■ The showing required by the Secretary has two principal components. The Secretary must first establish that the claimant's impairments do not preclude certain types of activity necessary for other occupations, and that the claimant's prior work experience involves skills transferable to other types of work. The Secretary must then show the existence in the national economy of specific types of jobs suitable for the claimant in light of her skills and physical or mental capabilities. 42 U.S.C. § 423(d)(2)(A). *See, e. g., Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

The method by which the Secretary is to evaluate claims, and fulfill his statutory burden, has been modified somewhat by the adoption in 1979 of a detailed set of regulations. 20 C.F.R. §§ 404.1501 to 404.1539 and Apps. 1 & 2 (1980). *See Hicks v. Califano*, 600 F.2d 1048, 1050 (4th Cir. 1979). Along with specifying a sequential analysis of an applicant's claim, 20 C.F.R. § 404.1503 (1980), the regulations authorize the Secretary to notice administratively the existence of jobs in the national economy, and to award or to deny benefits by comparing the claimant's age, educational level, and skill experience with certain medical-vocational guidelines. 20 C.F.R. §§ 404.1509, 404.1513 & App. 2 (1980).

Although prior case law in this Circuit had generally required the use of a vocational expert to establish both the claimant's suitability for certain jobs and the existence of such jobs in the national economy, *compare Wilson v. Califano*, 617 F.2d 1050, 1053–54 (4th Cir. 1980) and *Smith v. Califano*, 592 F.2d at 1236–37, with *McLamore v. Weinberger*, 538 F.2d at 575, a panel of the Fourth Circuit has approved, at

least in principle, the use of administrative notice to establish "the existence in the economy of jobs which a person with [the claimant's] qualifications could fill." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The court's decision in *Frady*, however, does not sanction the wholesale abandonment of vocational expert testimony. 646 F.2d at 144 n.3. Nevertheless, the full import of the new regulations in this Circuit is unclear, as the majority opinion in *Frady*, did not elucidate upon the Secretary's use of the regulations to determine functional residual capacity, ability to do certain kinds of work, and the transferability of occupational skills. 20 C.F.R. §§ 404.1510, 404.-1511, 404.1513 & App. 2 (1980). *See Frady v. Harris*, 646 F.2d at 145–46 (Hall, J., dissenting).

Chief Judge Feinberg has commented upon the administrative notice aspect of the regulations as follows:

"Thus, whenever a particular rule is found applicable to the facts of a claim, it is unnecessary for the Secretary to identify specific alternative jobs for that particular claimant; the existence of such jobs has been 'noticed' in the regulatory drafting process.

"Strictly interpreted, the rules take administrative notice only of the 'existence' of alternative jobs; they do not, in so many words, purport to override the need for a particularized showing in each case of the suitability of alternative jobs in the light of the claimant's age, residual capacity, experience, and skills. *Cf. Taylor v. Weinberger*, 512 F.2d 664, 668 (4th Cir. 1975) ('[W]hile ... the Secretary may administratively notice the *existence* of [specified] jobs in the economy, facts pertaining to the capacity of a specific individual can be supplied only by particularized proof.' (Emphasis in original)). As a practical matter, however, the two inquiries are difficult to separate: when the rules assert that jobs exist for persons having a particular set of characteristics they are necessarily asserting that these jobs are 'suitable' without any need for an individual showing of suitability.

"This aspect of the rules raises a question of consistency with established case law governing the determination of available alternative employment. Once a claimant's residual functional capacity and skill level have been ascertained, this court and others have generally required that the Secretary identify specific alternative occupations available in the national economy that would be suitable for the claimant. The cases have also insisted that these jobs be supported by 'a job description clarifying the nature of the job, [and] demonstrating that the job does not require' exertion or skills not possessed by the claimant. *Bastien v. Califano, supra*, 572 F.2d [908] at 912–13. This requirement of specificity has two principal purposes. First, it assures the claimant of adequate notice of the grounds on which his claim may be denied, providing him with an opportunity to present rebuttal evidence. *See generally* 3 K. Davis, Administrative Law Treatise § 15.18, at 198–206 (2d ed. 1980). Second, it helps to create a satisfactory administrative record for judicial review, enabling the courts to determine more readily whether the Secretary's decision rests on 'substantial evidence.' *Cf. O'Banner v. Secretary of HEW*, 587 F.2d 321, 323 (6th Cir. 1978)."

*Decker v. Harris*, 647 F.2d at 297–98.

Other courts have also expressed concern over, and have found apparent misapplications of, various aspects of the 1979 regulations. *See, e. g., Powell v. Harris*, 516 F.Supp. 1001, 1002–03 (W.D.Ark.1981); *Freeman v. Harris*, 509 F.Supp. 96, 102–03 (D.S.C.1981); *Stewart v. Harris*, 508 F.Supp. 345, 348–49 (D.N.J.1981); *Goff v. Harris*, 502 F.Supp. 1086, 1091–92 (E.D.Va. 1980); *Maurer v. Harris*, 502 F.Supp. 320, 322–24 (D.Ore.1980); *Williams v. Harris*, 500 F.Supp. 214, 216 (W.D.N.C.1980); *Wilson v. Harris*, 496 F.Supp. 746, 748 (E.D. Wis.1980); *Phillips v. Harris*, 488 F.Supp. 1161, 1167–69 (W.D.Va.1980). *But see Sloan v. Secretary of Health and Human Services*, 512 F.Supp. 1296, 1298–99 (N.D.W. Va.1981).

██ The ALJ's decision in this case is replete with the appropriate conclusory terms purporting to justify a denial of benefits. Nevertheless, a close analysis of the ALJ's opinion, in light of the unrebutted evidence of record, demonstrates that it is flawed in several important respects.

The first flaw in the ALJ's opinion is the mischaracterization of medical evidence. For example, when discussing the reports of the plaintiff's coronary bypass surgery, the ALJ states that Dr. Gott's report "dated August 1, 1978, revealed that the claimant could engage in most normal activities." (Tr. 195). This characterization of Dr. Gott's report is plainly incorrect.

First, the report in question was dated May 19, 1978, not August 1, 1978 (Tr. 185). Second, Dr. Gott stated that he "hoped" the plaintiff would be able to engage in normal activities by August 1, 1978, not that she definitely would be able to do so. Finally, the plaintiff's "normal" activities at the time the report was written did not include any type of work; the plaintiff had been unemployed since January of 1976.

The ALJ also stated in his decision that "[t]he medical evidence from January 2, 1979 and subsequent to the supplemental hearing reveals that the claimant's subjective complaints of pain are not borne out by the objective medical findings." (Tr. 197). This factual assertion is also incorrect. The existence of pain is recorded throughout the various medical and diagnostic reports. The numerous clinical studies do not contradict the plaintiff's claims of pain, and it is undisputed that the plaintiff has undergone several major surgical procedures, as well as other treatments, for the express purpose of relieving recurrent pain. In sum, simply because the plaintiff may have recovered from the surgical procedures without complications, it does not necessarily follow that the pain associated with her physical impairments either never existed or does not continue to exist.

It is also apparent that the ALJ discounted, almost totally, the plaintiff's subjective complaints of constant pain, as well as her testimony regarding her physical limita-

tions. The reason given by the ALJ for disbelieving the plaintiff's testimony is as follows:

"It is concluded, by this Administrative Law Judge that since she was not always responsive to questions, exhibited no signs of physical distress except when speaking to this Administrative Law Judge, and was able to hold her left hand in a fist after 'demonstrating' to this Administrative Law Judge that she could not do it, doubts are raised as to the credibility of this witness."

Tr. 194. See also Tr. 198 (allegations of claimant lack credibility).

██ While a claimant's demeanor at a hearing can be considered by the ALJ in evaluating credibility and subjective complaints of pain, see McMillen v. Secretary of Health and Human Services, 491 F.Supp. 84, 87 (N.D.W.Va.1980); Locklear v. Mathews, 424 F.Supp. 639, 647 (D.Md.1976), it is inappropriate for the ALJ to judge a claimant by reference to some "Sit and Squirm" index. Tyler v. Weinberger, 409 F.Supp. 776, 789 (E.D.Va.1976). See Aubeuf v. Schweiker, 649 F.2d 107, 113 & n. 7 (2d Cir. 1981). Moreover, when evaluating the plaintiff's credibility, by reference to her conduct at the hearing, the ALJ failed to consider unrebutted medical opinion evidence regarding her longstanding personality disorder. See Brandon v. Gardner, 377 F.2d 488, 490–91 (4th Cir. 1967).

This is not a case in which a claimant's allegations regarding pain, and an inability to engage in substantial physical activity, are completely unsubstantiated. Cf. Ballowe v. Harris, 650 F.2d 130, 133 (8th Cir. 1981) (claimant's allegations of pain unsupported by and contrary to substantial medical evidence). In the instant case, there was no direct medical evidence contradicting the plaintiff's subjective complaints, and certain medical evidence corroborated the plaintiff's account of her symptoms. Finally, the need for major surgical procedures is evidence of significant pain, and the plaintiff's subjective complaints were confirmed by her husband, with reference to specific functional limitations. See

*Thorne v. Weinberger*, 530 F.2d 580, 582–83 (4th Cir. 1976). The court concludes, therefore, that the ALJ erred in effectively disregarding all of the plaintiff's uncontradicted evidence on the basis of his limited observations at the supplemental hearing.

After reviewing the evidence presented to the first ALJ, along with that produced in connection with the supplemental hearing, the ALJ concluded that the plaintiff's physical impairments had not lasted a continuous period of at least twelve months, and that they did not, singly or in combination, preclude her from engaging in substantial gainful employment (Tr. 200, No. 3). The ALJ also concluded that the plaintiff retained skills transferable from her prior work, and that she had sufficient residual functional capacity to engage in sedentary employment (Tr. 200, Nos. 1 & 4). In reaching these conclusions the ALJ noted, but decided not to follow, opinions by the plaintiff's treating physician that she was totally disabled. *See* Reports of Dr. Steinbach, at Tr. 216 & 288. *See also* Reports of Dr. Bhushan, at Tr. 132–33 & 168.

With respect to his consideration of the treating physician's reports, the ALJ not only misconstrued the medical basis of Dr. Steinbach's opinions (*See* Tr. 216 & 288), but also apparently rejected Dr. Steinbach's conclusion of total disability because he disbelieved the plaintiff's testimony (Tr. 198–99). It is now well settled that the opinion of a treating physician is entitled to special consideration and is not to be disregarded lightly in the absence of competent, conflicting evidence. *See, e.g., Stawles v. Califano*, 596 F.2d at 1213; *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974); *Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir. 1971). Since there was no medical evidence directly contradicting Dr. Steinbach's conclusion, and his opinion is supported by clinical findings and is consistent with unrebutted testimony, the court concludes that the ALJ failed to give such opinion testimony appropriate weight. *See generally Higgenbotham v. Califano*, 617 F.2d 1058, 1059–60 (4th Cir. 1980).

The ALJ's conclusions regarding the duration and severity of the plaintiff's physical impairments is not supported by the evidence of record. The plaintiff's back and leg problems were first diagnosed in January of 1976 (Tr. 89–94). The plaintiff's difficulties with her hands were also noted in early 1976 (Tr. 120–21, 168). Although the plaintiff did undergo corrective surgery and other medical treatment for these impairments, objective medical evidence in 1979 demonstrates that these problems are of a continuing nature (Tr. 284–85, 288, 292–93). Moreover, both the plaintiff and her husband presented unrebutted testimony on the issues of duration and severity. Simply because the plaintiff recovered from the surgical procedures themselves, and has not been totally helpless or bedridden over the years, does not mean that her impairments are lacking in the requisite continuity or severity to support the finding of a disability. *See, e.g., Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981); *Totten v. Califano*, 624 F.2d 10, 11–12 (4th Cir. 1980).

Although the ALJ acknowledged that the plaintiff's impairments precluded her from performing her past work, *see* 20 C.F.R. § 404.1503(f), he found that she had sufficient residual functional capacity to perform sedentary work. *See* 20 C.F.R. §§ 404.1505, 404.1510. As an initial matter, the court cannot help but note the absence of any specific evidence before the ALJ supporting a finding that the plaintiff could perform "substantial services with reasonable regularity in some competitive employment or self employment." *Totten v. Califano*, 624 F.2d at 12, *quoting Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978). Other than making speculative inferences from the medical evidence, *see Smith v. Califano*, 637 F.2d at 972, the ALJ did not identify any substantial activity the plaintiff could engage in "with some degree of regularity." *Wilson v. Richardson*, 455 F.2d 304, 307 (4th Cir. 1972). Instead, the ALJ chose to rely upon his own interpretation of the plaintiff's condition and abilities (Tr. 199). *Cf. Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980) (ALJ may not take administrative notice based on his own knowledge).

In determining residual functional capacity, the ALJ must assess the "kind and severity" of the individual's impairments, the "manner in which the impairment(s) affects the individual's ability to perform work-related" activities, and the "kind and extent of function the individual retains." 20 C.F.R. § 404.1505(a). Moreover, when multiple impairments are involved, the assessment of residual functional capacity must reflect "the totality of restrictions resulting from all impairments." *Id.* § 404.1505(a). In addition, the regulations provide that:

"Where the residual functional capacity so determined is not sufficient to enable the individual to do his or her previous work, it must be determined what work, if any, the individual can do, taking into consideration the individual's residual functional capacity, age, education, and work experience and whether work that the individual can do exists in significant numbers in the national economy."

*Id.* § 404.1505(f).

The ALJ's finding that the plaintiff retained sufficient residual functional capacity to perform sedentary work is wholly devoid of evidentiary support. For example, no specific findings were made regarding the plaintiff's physical capabilities "for sustained activity on a regular basis." 20 C.F.R. § 404.1505(b). Further, the ALJ did not make specific findings regarding the plaintiff's ability to meet even the very general exertional requirements for sedentary work. 20 C.F.R. § 1510(b). *See Goff v. Harris*, 502 F.Supp. at 1091–92.

Assuming that the plaintiff's prior work was properly classified by the ALJ as "skilled" employment, *compare* 20 C.F.R. § 404.1511(c) (semi-skilled) *with id.* § 404.1511(d) (skilled), there are no specific findings in the record supporting the ALJ's conclusion regarding the transferability of the plaintiff's retained skills to other occupations (Tr. 199). The ALJ did not even suggest alternative occupations, much less analyze "the similarity of occupationally significant work functions among jobs." 20 C.F.R. § 404.1511(e). *See, e.g., Freeman v. Harris*, 509 F.Supp. at 102; *Maurer v. Harris*, 502 F.Supp. at 323.

The ALJ's opinion is also deficient in that no factually based findings were made concerning the plaintiff's present ability to use her skills, in light of her impairments, in any particular sort of sedentary work. Consequently, even assuming that the plaintiff does retain some transferable skills, the record does not support the ALJ's conclusion that *this claimant* has the capacity to perform work that exists in the national economy. *See, e.g., Stewart v. Harris*, 508 F.Supp. at 349; *Phillips v. Harris*, 488 F.Supp. at 1167. *See also Wilson v. Harris*, 496 F.Supp. at 748.

The fact that the ALJ's purported findings may match the criteria set out in Rule 201.22 or Rule 201.29 of Appendix 2, 20 C.F.R. Subpart P, does not mean that the Secretary's decision is necessarily supported by substantial evidence. As has been noted by Chief Judge Feinberg, *Decker v. Harris*, 647 F.2d at 297–98, and Judge Williams, *Phillips v. Harris*, 488 F.Supp. at 1167–69, simply plugging a claimant's age, educational level, and work level into a "grid," without making particularized findings, would be contrary to well established case law. Such an approach effectively, but erroneously, equates the mere existence of jobs in the national economy with the claimant's capacity and ability to perform such work. *See also Maurer v. Harris*, 502 F.Supp. at 323; *Williams v. Harris*, 500 F.Supp. at 216.

While the panel majority in *Frady* did approve the use of administrative notice to establish the existence of jobs in the national economy, this court does not read the panel opinion as relieving the Secretary of his well established duty to make particularized findings, based upon substantial evidence, regarding the claimant's residual functional capacity, ability to perform work, and skill transferability. *Compare* 646 F.2d at 144–45 (Murnaghan, J.), *with* 646 F.2d at 145–46 (Hall, J., dissenting). Accordingly, the court holds that the Secretary may not rely upon the results of the "grids" in Appendix 2 to deny benefits until and unless he has made the requisite

well founded particularized findings contemplated by well settled case law and the regulations themselves. *See generally Perez v. Schweiker*, 653 F.2d 997, 1000–02 (5th Cir. 1981).

For the reasons set out above, the court concludes that the Secretary has failed to carry his burden of demonstrating the existence of specific jobs in the national economy for which the plaintiff is qualified. Consequently, the decision of the Secretary denying the plaintiff's application for disability insurance benefits is not supported by substantial evidence.

 In the ordinary situation, this court would remand a case to the Secretary to allow the ALJ to correct errors of law and to consider additional evidence. A remand in this case, however, would be inappropriate. Not only is there no new evidence to be considered, *see Barnard v. Secretary of Health and Human Services*, 515 F.Supp. 690, 694 (D.Md.1981) (criteria for remand under 1980 amendments), but the plaintiff's case has already been twice considered by an ALJ, the Appeals Council, and this court. *See Smith v. Califano*, 637 F.2d at 972–73 n.1. Since there is substantial evidence in the record supporting the plaintiff's claim of a disability commencing in January of 1976, and "reopening the record for more evidence would serve no purpose," *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974), the court will grant the plaintiff's motion for summary judgment and order the Secretary to award benefits. *See Taylor v. Weinberger*, 512 F.2d 664, 668–69 (4th Cir. 1975).

Accordingly, it is this 25th day of September, 1981, by the United States District Court for the District of Maryland, ORDERED:

1. The plaintiff's motion for summary judgment is GRANTED.

2. The Secretary's motion for summary judgment is DENIED.

3. The Secretary is instructed to award the plaintiff the disability insurance benefits as prayed for in her application.