917 F.2d 1301
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Franklin E. GROVER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-1742.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 24, 1990.
Decided Nov. 8, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Jerry D. Hogg, United States Magistrate. (CA-88-1491-2)
 Carter Zerbe, Charleston, W.V., for appellant.
 James C. Newman, Acting Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Division, Deborah Fitzgerald, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa., Michael W. Carey, United States Attorney, Stephen M. Horn, Assistant United States Attorney, Charleston, W.V., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before K.K. HALL, MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Franklin Grover appeals from an order and judgment of the United States District Court for the Southern District of West Virginia that affirmed a decision by the Secretary of Health and Human Services to deny his claims for disability benefits under Titles II and XVI of the Social Security Act. He claims that the Secretary's decision failed to give adequate weight to the testimony of his treating and examining physicians, and failed to credit properly his testimony concerning his symptoms. Because we find that the Secretary's decision was supported by substantial evidence, we affirm the district court's judgment.
 
 I.
 
 2
 Franklin Grover filed an application on December 16, 1986, for disability benefits under Titles II and XVI of the Social Security Act. 42 U.S.C. Secs. 301 et seq. He claimed that he had been unable to work since October 30, 1986, because of his heart condition and his diabetes. On April 18, 1988, an Administrative Law Judge (ALJ) denied Grover's application on the grounds that he was still capable of performing his old job as a detail man for car dealers, a job that consisted of washing and waxing vehicles and installing pickup truck bed liners. See 20 C.F.R. Secs. 404.1520(e), 416.920(e) (1990). The ALJ found that Grover had severe longstanding diabetes, a treatment history for cardiac bypass surgery, a single hospitalization for complications from his diabetes and alcohol intake, impaired intelligence with an I.Q. of 72, and a personality disorder. Acknowledging that these conditions limited the work that Grover could perform, the ALJ nevertheless found that he was capable of returning to his old job as well as of performing other unskilled medium, light, or sedentary work.
 
 
 3
 Grover requested review of this decision by the Appeals Council of the Social Security Administration (SSA), and offered a new medical report from Dr. Timothy Harper in support of his claim of disability. The Appeals Council considered the new evidence but on September 23, 1988, affirmed the ALJ's decision because the total evidence of record did not reveal any significant deterioration in Grover's physical condition or any further restriction in his ability to function that precluded him from engaging in his past relevant work.
 
 
 4
 Following that final decision by the SSA, Grover filed the present action in the United States District Court for the Southern District of West Virginia. The court referred the matter to a United States Magistrate pursuant to 28 U.S.C. Sec. 636(c)(1). Grover moved to submit an additional evaluation dated September 23, 1988, from Dr. Nicholas Cassis, one of Grover's treating physicians, who concluded that Grover was "disabled except for very limited, sedentary work." The magistrate denied the motion because the evaluation did not indicate significant deterioration in Grover's condition and thus added nothing new to the existing record. On January 16, 1990, the magistrate affirmed the Secretary's denial of benefits to Grover because that decision was supported by substantial evidence.
 
 
 5
 Grover now appeals.
 
 II.
 
 6
 Grover argues that the ALJ's affirmation of the Secretary's conclusion that he could return to his past relevant work and had the residual functional capacity for work at a medium exertional level was inconsistent with the medical evidence and ignored his treating physicians' opinions as well as his own testimony about his symptoms. Under the Social Security Act, our review of the Secretary's decision is limited to whether his findings were supported by substantial evidence. 42 U.S.C. Sec. 405(g). We agree with the district court that the Secretary's denial of benefits was so supported.
 
 
 7
 Grover's claim that the Department of Health and Human Services ignored his treating physicians' opinions is based primarily on a note dated December 31, 1987, signed in Dr. Cassis' name, that consists of a single sentence stating that "Mr. Grover remains totally disabled--meds include Nitrol, Cardizem, ASA, insulin." This unsupported statement was the only medical opinion Grover introduced that presented the view that he was disabled.* Grover asserts that the Secretary ignored Dr. Cassis' note and that "a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence." Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir.1984).
 
 
 8
 Here, there clearly is "persuasive contrary evidence" that Grover was not disabled. The ALJ referred to numerous cardiac evaluations and stress tests that Grover had undergone since his cardiac bypass surgery in August 1985 for two vessel coronary artery disease and angina. Following the cardiac procedure in August 1985, Grover's treating physician, Dr. James Stanton, stated that Grover was doing well and could return to work in October 1985. In October 1986, a stress test was negative for evidence of ischemia. In December 1986, a stress test was discontinued because Grover complained of chest discomfort but no EKG changes indicative of ischemia occurred. Because Grover continued to complain of chest pain, Dr. Stanton conducted a stress thallium study on April 27, 1987. It revealed no evidence of ischemia and no evidence of any previous myocardial infarctions.
 
 
 9
 Grover now concedes that his coronary artery disease is not disabling in itself, and points to his diabetes and liver problems as his primary disabling conditions. The ALJ found that the medical record presented no evidence that Grover's diabetes had led to end organ damage, or to other problems such as skin ulcers. The record also attributed Grover's liver problems to alcohol abuse. For example, Grover's single hospitalization for liver problems was in December 1986 for delirium tremens and alcohol-induced hepatitis. His diabetes was out of control during that admission because of his other medical problems. The ALJ noted that all these complications promptly improved with treatment.
 
 
 10
 Grover would have the ALJ ignore this medical history and accept Dr. Cassis' one-sentence note as conclusive evidence that he was disabled. He also desires that the ALJ disregard the facts that Grover has been able to work for years despite his problems, and that the record contains no evidence that his medical condition has significantly deteriorated from that time. The ALJ properly chose not to do so.
 
 
 11
 Grover's second major complaint is that the ALJ did not give adequate weight to his testimony concerning his subjective symptoms and overemphasized the appearance and abilities that he displayed in the courtroom. He argues that because his subjective symptoms were consistent with his medical problems, it was error for the court to discount his testimony, even though it appeared to be self-serving. See Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir.1984); Wander v. Schweiker, 523 F.Supp. 1086 (D.Md.1981).
 
 
 12
 We disagree. At the oral hearing before the ALJ, Grover asserted that he was functionally illiterate, forgetful, and had frequent dizzy spells. Despite being "illiterate," however, he had been able to read and complete by hand disability forms, and to prepare an exhibit displaying his medication schedule by name of medication and amount. The ALJ found that his ability to answer questions and recall facts during the hearing were "good." The ALJ also referred to a psychiatric evaluation of Grover's functional capacity that "specifically ruled out any memory impairment." Finally, the ALJ found no evidence of dizzy spells in the medical record, as recorded by either Grover's treating physicians or consulting examiners.
 
 
 13
 Grover argues that his medical record is replete with references to hypoglycemic episodes that are causing his dizziness. With the exception of his hospitalization for alcohol-induced hepatitis, however, there are no documented episodes of dizziness or hypoglycemia. Most of the references that appear are simply records of the problems that Grover reported, without independent validation. Even Dr. Cassis, in his December 1986 evaluation, reported that Grover was "unable to work for several months because of 'weak spells' but failed to followup medically and [I am] unable to document etiology by history. The patient related these to 'intolerance to heat' and 'low blood sugar' but again [did not] followup and [I am] unable to document."
 
 
 14
 It is unquestionably true that hypoglycemic episodes can cause dizziness. But the mere fact that Grover complains of dizziness does not establish a conclusive link to his diabetes. He asserts that the ALJ must accept his complaints at face value because they are consistent with his medical problems and no evidence proves that he is not having dizzy spells. Documenting hypoglycemic episodes should be a fairly easy and routine matter. However, the evidence in Grover's case is lacking. In contrast, it is unclear how the government could ever prove that Grover did not have subjective dizzy spells. It was not error for the ALJ to discount Grover's testimony.
 
 III.
 
 15
 In summary, the Secretary agreed that Grover suffered from a number of unfortunate ailments. They are all chronic problems, however, and there was no evidence before the Secretary that Grover's condition had recently deteriorated. Because Grover had been able to work with his ailments in the recent past, the Secretary concluded that Grover could continue such work in his current condition. We hold that this conclusion was supported by substantial evidence.
 
 The judgment is
 
 16
 AFFIRMED.
 
 
 
 *
 Dr. Harper, in his letter of June 17, 1988, that was not before the ALJ but that the Appeals Council accepted, wrote that Grover "should be considered for disability." This is hardly a conclusion that Grover was disabled, as he would have us interpret it