Marjorie L. STAWLS, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education, and
Welfare, Appellee.

No. 77–2108.

United States Court of Appeals,
Fourth Circuit.

Argued July 17, 1978.

Decided May 3, 1979.

Ralph Rabinowitz, Norfolk, Va. (O. L. Gilbert, Rabinowitz, Rafal & Swartz, Norfolk, Va., on brief), for appellant.

Thomas A. Dougherty, Jr., Asst. Regional Atty., Dept. of H. E. W., Washington, D. C. (Stephanie W. Naidoff, Regional Atty., Dept. of H. E. W, Washington, D. C., William B. Cummings, U. S. Atty., Alexandria, Va., Michael A. Rhine, Asst. U. S. Atty., Norfolk, Va., on brief), for appellee.

Before BUTZNER, RUSSELL, and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Marjorie L. Stawls appeals from the district court's affirmance of the Secretary of Health, Education and Welfare's denial of disability benefits under the Social Security Act. She claims to be disabled within the meaning of 42 U.S.C. § 423(d) due to schizophrenia. The Secretary does not contend that Mrs. Stawls is not presently suffering from a mental disorder; in fact, that is conceded. Rather, the Secretary maintains that plaintiff failed to establish that, beginning on or before the date she was last insured,[1] she suffered a disability of sufficient severity to preclude her from engaging in substantial gainful activity.

Mrs. Stawls is fifty-two years of age, and a high school graduate. Upon graduating from high school, she went to work for Virginia Electric and Power Company (VEPCO). She worked for VEPCO for thirteen years as an office clerk, and resigned from VEPCO in 1957 because of anxiety, tension, nerves, inability to sleep and to cope with any stress, and upon the recommendation of her doctor. Since that time, she has done some volunteer work and as much housework as she can. She claims that she has been unable to work since June 1956 because of poor mental health and inability to cope with stress.[2]

The evidence adduced at the hearing showed the following. Appellant has been under psychiatric care from 1954 through the present. From 1954 to 1967, she was under the care of Dr. Robert Thrasher, and from 1967 to the present she has been under the care of Dr. William Gibbs. Both Doctors Thrasher and Gibbs are practicing psychiatrists. In 1957, an X-ray of appellant's upper gastrointestinal tract was taken and the X-ray was normal. An intravenous cholangiogram was also performed and was considered normal. From November 23, 1963 to December 25, 1963, she was hospitalized at Norfolk General Hospital for what was diagnosed as reactive depression. During this period of hospitalization, she received her first shock therapy.[3] She was again hospitalized from April 28, 1967 to May 5, 1967 for what was finally diagnosed as psychoneurosis and anxiety.[4] Between June 21, 1967 and July 27, 1974, Mrs. Stawls was hospitalized on eight separate occasions with diagnoses ranging from psychoneurosis and anxiety to acute schizophrenic state to chronic schizophrenia. An aide to her Congressman (apparently a case worker), and acquaintance of Doctors Thrasher and Gibbs as well as Mrs. Stawls, testified at the hearing. She testified that while appellant was working for VEPCO she had already begun exhibiting emotional problems. She also testified that Dr. Gibbs stated that since 1967, the date from which he has known Mrs. Stawls, he thought she was

---

1. The administrative law judge determined that appellant was last insured on September 30, 1962. The Appeals Council determined that she was last insured on June 30, 1962, but concluded that the difference in dates did not "materially alter the essential conclusion of the administrative law judge's decision."

2. At her hearing before the administrative law judge, appellant testified that she was unable to work because of nervousness, chronic insomnia, terrific anxiety, the fact she was confused most of the time, and exhaustion.

3. Appellant testified that she had been hospitalized nine or ten times for shock therapy.

4. The hospital discharge summary stated that Mrs. Stawls was admitted to the hospital when she became panicky for no obvious reason. It also stated that she was mildly paranoid and agitated when admitted, and that she had a long psychiatric history.

physically or mentally unable to cope with a job. On February 24, 1976, Dr. Thrasher called the State agency at Norfolk. He stated that he was unable to locate his records on appellant, but, from what he could recall, she was depressed, had a lot of anxiety and a very marked personality. Dr. Thrasher further stated that appellant had to resign from her job with VEPCO "because she could not handle it." In a letter dated April 2, 1976, Dr. Gibbs stated that he hospitalized appellant on nine occasions, with diagnoses ranging from acute anxiety state to acute schizophrenic state to chronic schizophrenic reaction. He stated that during the time of her remissions, between hospitalizations, she remained on tranquilizers or sedatives, or both. Dr. Gibbs also said that during the remissions from the acute phases of her illness appellant did not exhibit serious difficulties. Dr. Gibbs concluded, "It is my opinion that she is unable to work, because of the frequency of her exacerbations of her disorder. In my opinion she has been unable to work steadily at any sort of employment since I have known her. It is my conjectured opinion that she was unable to work for many years before I made her acquaintance."

Based upon the above evidence, the administrative law judge determined that, "The evidence fails to prove that the [appellant] was under a 'disability' within the meaning of the Social Security Act, as amended, that had its onset while she still had insured status and which continued to a time within the retroactive filing date of this application." The administrative law judge stated:

"It is conceded . . . that the evidence available in this case does in fact show that this unfortunate lady has indeed had troublesome emotional problems at least since November of 1963, when she was first hospitalized for same. According to the available records, it was not again necessary for her to be hospitalized for emotional problems until 1967, some three to four years later. However, the available medical evidence does not in fact prove that the claimant had a continuous, incapacitating mental illness dating from sometime before September of 1962 up to a year before she filed her current application, which is what the evidence must show before she could be found to be entitled on this application. To the contrary, her present treating psychiatrist has unequivocally stated that during the periods of remissions from her acute phases of her illness, claimant did not exhibit serious difficulties. Her own testimony as to her activities in public and civic affairs rather conclusively proves that she does not have the types of limitations set forth in the Social Security Regulations dealing with disability as constituting an incapacitating mental illness, that is that quite obviously, she has not had prolonged, marked restriction of her daily activities, constriction of interest and seriously impaired ability to relate to other people."

The administrative law judge concluded by stating that the denial of disability benefits "is . . . based on the lack or deficiency of medical evidence . . . which would actually prove that the claimant has been in fact completely incapacitated or unable to engage in any type of work activity from September of 1962 up until the present time."

Appellant requested and received a review of the administrative law judge's decision by the Appeals Council. Pursuant to her request, in addition to the evidence considered by the administrative law judge, the Council considered two pieces of evidence that were not before the administrative law judge at the time he rendered his decision. The Council considered a letter from Dr. Gibbs dated October 14, 1976. In this letter Dr. Gibbs clarified the statement he made in his letter of April 2, 1976 that Mrs. Stawls does not exhibit serious difficulties during remissions from the acute phases of her illness. Dr. Gibbs stated:

"The nature of her ongoing illness permits her to remain without being hospitalized and without causing a serious problem in her environment for considerable periods of time when she is 'in remission'. It must be evident to anyone, who

will accept the diagnosis of Chronic Schizophrenia as a legitimate diagnosis, to recognize that these individuals can not cope with any additional stress and strain in their everyday lives without being subject to an acute phase in this illness. "In my opinion Mrs. Stawls is not able to work when she is 'in remission,' because seeking a job or actively accepting continuous type of employment would constitute such a stress on her adaptation that it would precipitate her illness."

Additionally, the Council considered a letter from Dr. Thrasher dated October 22, 1976. This letter was written in response to appellant's request for information regarding her employability prior to 1962. Although Dr. Thrasher was still unable to locate his records, he stated that he was able to give a "decisive" medical opinion about her employability.[5] After making numerous observations concerning the mental health of appellant since he first began seeing her in 1954, Dr. Thrasher concluded:

"In retrospect, based on my personal knowledge of her and the review of my hospital notes of her and on the review of her subsequent hospitalizations, it would be my opinion Mrs. Stawl's [sic] has been suffering from schizophrenic reaction from the time that I first saw her. For the most part during the early years it was of a chronic undifferentiated type with the predominate symptomatology of that being pseudoneurotic. However, during times of stress, she was showing signs of paranoid ideation certainly by 1962 and probably before that. As her illness continued she developed more florid paranoid symptomatology during her psychotic breaks and it is my opinion that the diagnosis currently should be schizophrenic reaction, paranoid type.

"It is my professional opinion, based on the above facts, that Mrs. Stawls had become totally and permanently disabled for any significant and sustained employment by the time she had terminated her employment at VEPCO."

In a letter to appellant, the Appeals Council stated, "After considering this additional evidence the Council is of the opinion that it does not show that you were under a 'disability' which began on or before the date you were last insured and which existed continuously to a time within the effective life of your application." The Council concluded, "The Appeals Council has decided that the [administrative law judge's] decision is correct. . . . Accordingly, the hearing decision stands as the final decision of the Secretary in your case."

Pursuant to 42 U.S.C. § 405(g), appellant sought judicial review of the Secretary's final decision in the district court. The district court affirmed the Secretary's decision, concluding, "We find that the Secretary's decision that [appellant] has failed to prove that she had an impairment of such severity that she was unable to engage in any type of substantial gainful employment prior to September 30, 1962 is supported by substantial evidence. Since we affirm this finding we need not consider the medical evidence concerning [appellant's] mental condition subsequent to September 30, 1962."[6]

■ The issue before us is whether the final decision of the Secretary that appellant is not entitled to disability insurance benefits is supported by substantial evidence. The Secretary determined that she was not entitled to disability benefits because she failed to establish that prior to June 30, 1962, the date she was last insured, she suffered a disability of sufficient severity to preclude her from engaging in any substantial gainful activity. The Secretary premised this determination on the lack or deficiency of pre-June 30, 1962 medical evi-

---

5. Dr. Thrasher based his opinion on his recollection of Mrs. Stawls, his ledger card records of her visits to his office, his visits to her in the hospital on various occasions, and on a review of all of her records made while she was admitted to Norfolk General Hospital, both under his care and the care of other physicians.

6. The Appeals Council pointed out the relevant date is June 30, 1962 and not September 30, 1962.

dence that would "actually prove" that appellant suffered the requisite disability. As the evidence set forth earlier in this opinion demonstrates, there is a plethora of post-June 30, 1962 medical evidence, including the statements of Dr. Thrasher that prior to June 30, 1962 appellant was disabled due to schizophrenia. We especially note that both Doctors Thrasher and Gibbs were highly qualified treating physicians whose opinions are entitled to special consideration. *Hubbard v. Califano*, 582 F.2d 319 (4th Cir. 1978); *Martin v. Secretary*, 492 F.2d 905 (4th Cir. 1974).

■ We do not think the denial of disability benefits should stand. At the same time, the record may not be conclusive that Mrs. Stawls was disabled within the meaning of the Act on or before June 30, 1962. The deficiency in the decision of the Secretary stems from the fact that he failed to indicate the weight accorded appellant's post-June 30, 1962 medical evidence, as well as explaining why such evidence from two treating, qualified psychiatrists did not require a finding that beginning on or before June 30, 1962 appellant was disabled within the meaning of the Act. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " *Arnold v. Secretary of H.E.W.*, 567 F.2d 258, 259 (4th Cir. 1977).

■ The Secretary stated that he considered all of the evidence in the record, including the post-June 30, 1962 evidence. Even assuming that schizophrenia is progressive in nature, proof that appellant was disabled due to schizophrenia after June 30, 1962 is probative of the fact that she may have been disabled due to schizophrenia before June 30, 1962, although it is not conclusive. *Talley v. Mathews*, 550 F.2d 911, 917–18 (4th Cir. 1977); *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976), cert. den., 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977) (black lung cases). But neither the

opinion of the administrative law judge nor that of the Appeals Council indicates the weight afforded the post-June 30, 1962 evidence. As we have stated on more than one occasion, the Secretary must indicate explicitly that all relevant evidence has been weighed and. its weight. See, e. g., *Arnold*, 567 F.2d at 259; *Thorne v. Weinberger*, 530 F.2d 580, 582 (4th Cir. 1976). We therefore remand this case to the district court with instructions to remand it to the Secretary and direct the Secretary to reconsider the case and to indicate explicitly in such reconsideration the weight accorded to the post-June 30, 1962 evidence, and why the uncontradicted evidence of the psychiatrists should not suffice to afford recovery.

■ On remand, both parties should be afforded the opportunity to submit further evidence. At her hearing before the administrative law judge, appellant was present but was not represented by counsel. The administrative law judge explained to appellant that she had the right to be represented by counsel, but she expressed the desire to proceed without the aid of an attorney. In light of the fact that the hearing took place at a time when all agree she was suffering from a mental disorder, we believe that it is not unlikely she may not have been able to appreciate the need for assistance of counsel at the hearing. Thus, on remand, appellant's attorney, as well as the Secretary, should be afforded the opportunity to present such additional evidence as they may be so advised on the issue of appellant's disability.

*VACATED AND REMANDED.*