791 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EDWARD R. DANIELS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-1246
 United States Court of Appeals, Sixth Circuit.
 4/4/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: LIVELY, Chief Judge; CONTIE, Circuit Judge; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Edward R. Daniels appeals from the district court's judgment affirming the Secretary's determination that Daniels is not disabled and is therefore not entitled to disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 On October 18, 1982, Daniels filed an application for disability insurance benefits alleging that he was disabled as of April, 1981 due to diabetes, high blood pressure and an arthritic hip. His claim was denied initially on November 19, 1982 and upon reconsideration on January 6, 1983. Daniels subsequently requested and was granted a hearing before an Administrative Law Judge (ALJ).
 
 
 3
 The hearing was held on June 10, 1983. Daniels testified at the hearing as to his personal history, his work history and his ailments. Daniels was born on January 3, 1939 and has a high school education. He was employed for nearly seventeen years as a hand polisher and materials handler until his employer went out of business in April of 1981. Daniels tried driving a taxi cab from May to June, 1981. His only subsequent employment was with the Northeast Michigan Rehabilitation and Opportunities Center, a sheltered work center, from January through June of 1982. Daniels made pallets and duck boxes at the Center, using such tools as a table saw, jigsaw and hammer.
 
 
 4
 Daniels testified that his diabetes had been diagnosed for eleven or twelve years and that his family had a history of diabetes. At the time of the hearing, he was taking fifty units of insulin in the morning and twenty-five units in the evening. Daniels further testified that he was hospitalized from October 12 through October 18, 1982, due to a blood sugar problem. He also stated that the diabetes has caused problems with his circulation, creating numbness in his feet and toes.
 
 
 5
 Daniels further testified that he suffered from pain in his hip which began when he was twelve years old and which had progressively worsened. Daniels stated that the pain was extreme, causing him to limp and preventing him from sleeping more than two and one-half hours at a time.
 
 
 6
 With regard to his hypertension, Daniels testified that it was diagnosed in 1962 or 1963. At the time of the hearing, Daniels was taking three types of medication for his hypertension which he believed controlled the problem. However, Daniels claimed that this medication, combined with his pain medication, caused double vision and unstable equilibrium. Daniels also stated that he had blurred vision, but he did not know its cause.
 
 
 7
 Daniels further testified regarding the physical limitations caused by his ailments. Daniels had stopped hunting and fishing and he had difficulty performing any household work. He stated that he could stand for fifteen minutes and could sit for about one hour before pain caused him problems. He purportedly could sustain one activity for one hour at the most without needing rest. At the time of the hearing, Daniels would not attempt to lift anything over five pounds, even though no doctor had placed any restrictions on his lifting.
 
 
 8
 The following medical evidence was introduced at the hearing. Dr. H. S. Mullens treated Daniels intermittently for diabetes and hypertension from April 25, 1973 through January 21, 1980. During that period, Daniels was taking eighty units of insulin per day. The treatement appeared to control Daniels' ailments and Dr. Mullens noted there was no end-organ damage. Dr. Dennis Dettloff treated Daniels from November 9, 1981 through November 2, 1982. Dr. Dettloff diagnosed diabetes mellitus, hypertension and arthritis of the left hip. Dr. Dettloff indicated there was no limitation on Daniels' range of motion and stated that Daniels' gait was normal. Dr. Dettloff did note, however, that Daniels suffered pain in his left hip on ambulation. Dr. Dettloff described Daniels' diabetic condition as unstable and indicated end-organ damage of 'paresthesias in lower legs and feet and ophthalmic.'
 
 
 9
 Daniels was hospitalized from October 12, 1982 through October 18, 1982, for stabilization of poorly controlled diabetes. Daniels' condition was stabilized quickly. X-rays of his hips showed minimal osteoarthrosis, but otherwise normal bilateral hips.
 
 
 10
 While hospitalized, Daniels was referred to Dr. Robert Currier based on his complaints about his vision. Dr. Currier initially examined Daniels on October 17, 1982. Dr. Currier's impression at that time was background diabetic retinopathy, possible macular edema and probable lenticular changes via the sorbitol pathway. Dr. Currier indicated visual acuity was approximately 20/30. Dr. Currier assured Daniels at that time that his malady was not sight endangering. After a follow-up examination on October 25, 1982, Dr. Currier concluded that several factors indicated lack of vascular integrity, and that irreversible macular edema could ensue. Dr. Currier indicated that macular edema is treatable with laser therapy but he did not recommend Daniels as a candidate for the therapy. Dr. Currier observed that Daniels' blurred vision and double vision both are identified with diabetes.
 
 
 11
 On September 30, 1983, the ALJ issued his decision, finding that Daniels was not entitled to disability benefits pursuant to 42 U.S.C. Secs. 416(i) and 423. The ALJ reviewed the above evidence in concluding that Daniels failed to establish a severe impairment, and therefore disability, as set forth in 20 C.F.R. Secs. 404.1520(c) and 404.1521. The ALJ found that Daniels had diabetes and hypertension, but concluded there was 'no clinical evidence to support a diagnosis of left hip arthritis.' The ALJ also found that Daniels' testimony of severe limitations were unsupported by medical evidence.
 
 
 12
 Before the Appeals Council determined whether to review Daniels' case, additional medical evidence was presented relating to hospitalization occurring on August 1, 1983. Dr. Joseph Whelan issued a report stating that Daniels was hospitalized due to a left orbital headache which radiated to the left occipital area and neck and spread down Daniels' back to the lower dorsal area. The problem was not severe but persisted for two or three days. At about that time, Daniels developed diplopia and some unsteadiness in walking. Daniels also at times was unable to control his bowels. Dr. Whelan indicated that Daniels' motor system showed good strength throughout, but that Daniels had a left sixth nerve palsy of abrupt onset. Dr. Whelan linked Daniels' visual problems to his diabetes, observing that many diabetics recover from the ailments in several months. Dr. Whelan noted the possibility of a small brain infarct affecting the intramedullary portion of the left sixth nerve, but discounted the possibility of an aneurysm or other mass lesion. Dr. Whelan expected improvement of Daniels' condition with the passage of time.
 
 
 13
 On January 23, 1984, the Appeals Council denied Daniels' request for review, thereby rendering the ALJ's decision the final decision of the Secretary. Daniels then filed the instant action in district court on February 24, 1984, seeking review of the Secretary's denial of benefits. Both parties filed motions for summary judgment which were referred to a magistrate. On January 10, 1985, the magistrate filed his report and recommendation, finding substantial evidence to support the Secretary's decision and therefore recommending that Daniels' motion for summary judgment be denied and the Secretary's motion be granted. On February 6, 1985, the district court adopted the magistrate's report and recommendations and granted summary judgment in favor of the Secretary. This timely appeal followed.
 
 II.
 
 14
 Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's factual findings are conclusive if supported by substantial evidence. "Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirt v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). It is not the function of the court in reviewing an administrative decision to appraise the evidence de nove. Halsey v. Richardson, 441 F.2d 1230, 1236 (6th Cir. 1971).
 
 
 15
 Eligibility for Social Security disability benefits payments is determined pursuant to a seven-step sequential evaluation process. Garner v. Secretary of Health and Human Services, 745 F.2d 383, 387 (6th Cir. 1984). The third step of this sequential evaluation process entails determining whether the claimant has any severe impairments; any impairment that significantly limits the claimant's physical or mental ability to do basic work activities. Id.; 20 C.F.R. Sec. 404.1520(c); 20 C.F.R. Sec. 416.920(c). Examples of basic work activities are provided by 20 C.F.R. Sec. 404.1521(b) and include:
 
 
 16
 (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
 
 
 17
 (2) Capacities for seeing, hearing, and speaking;
 
 
 18
 (3) Understanding, carrying out, and remembering simple instructions;
 
 
 19
 (4) Use of judgment;
 
 
 20
 (5) Responding appropriately to supervision, co-workers and usual work situations; and
 
 
 21
 (6) Dealing with changes in a routine work setting.
 
 
 22
 The burden of establishing a severe impairment is on the claimant. Ragan v. Finch, 435 F.2d 239, 241 (6th Cir. 1970), cert. denied, 402 U. S. 986. (1971). Consequently, the claimant has the burden to show that alleged impairments significantly limit ability to perform basic work activities. Gist v. Secretary of Health and Human Services, 736 F.2d 352, 357 (6th Cir. 1984). In making a determination of severity, the Secretary has some flexibility in determining that an applicant can do basic work activities, even to the extent that the claimant cannot perform all activities illustrated in the regulations. Wallschlaeger v. Schweiker, 705 F.2d 191, 197 (7th Cir. 1983); Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 8 (1st Cir. 1982). Also, when presented with conflicting and contradictory evidence, the Secretary has the power to resolve conflicts in evidence and decide questions of credibility. Wokojance v. Weinberger, 513 F.2d 210, 212 (6th Cir. 1975), cert. denied, 423 U.S. 856 (1976).
 
 
 23
 Daniels was denied benefits due to a failure to establish a severe impairment as required under 42 U.S.C. Sec. 423(d)(2)(A), 20 C.F.R. Sec. 404.1520(c) and 20 C.F.R. Sec. 404.1521(a). The Secretary's decision, affirmed by the district court, denied benefits to Daniels because of his inability to support his contentions of severe limitations by medically determinable evidence. A review of all pertinent medical evidence fails to reveal any medical opinion or statement directly concerning Daniels' inability to sustain basic work activities. The report of Dr. Mullens, Daniels' treating physician for approximately seven years, does not indicate that his diabetes or hypertension was untreatable. Also, Dr. Mullens' report does not mention any arthritis problems nor does it indicate any circulation problems. In fact, Dr. Mullens observed no evidence of end-organ damage. While we recognize that Dr. Dettloff did find the presence of end-organ damage, namely paresthesias, he did not state that Daniels' condition would impose any limitations on his ability to perform basic work activities. Also, it is well-settled that in determining questions of substantiality of evidence on appeal, reports of doctors who have seen a patient over a period of time for purposes of treatment are given greater weight. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Thus, the findings of Dr. Mullens supports the Secretary's determination.
 
 
 24
 Daniels' work history also fails to support his claims of severe disability. Daniels was employed continuously through April, 1981 when his plant was closed. There is no indication that at any time during his employment Daniels missed work due to his asserted maladies. In fact, Daniels worked five of the next twelve months in the sheltered workshop before quitting in June of 1982, purportedly on the advice of Dr. Dettloff. However, there is no medical record opinion indicating this advice and no evidence in the record concerning any medical problems which occurred while Daniels was operating hand machinery at the workshop.
 
 
 25
 Daniels was hospitalized in October 1982 for treatment of his diabetes. However, with an adjustment of his insulin, Daniels' unstable blood sugar was quickly controlled. Also, the hip x-rays taken while Daniels was hospitalized indicate only minimal osteoarthrosis, thereby not supporting Daniels' claim of severe hip pain. These x-rays are consistent with Dr. Dettloff's observation that Daniels' range of motion was not limited and that his gait was normal.
 
 
 26
 As to Daniels' complaints about his vision, the medical evidence discusses no limitations resulting from Daniels' ailments. The evidence instead indicates that Daniels' overall visual acuity is acceptable.
 
 
 27
 Dr. Whelan's review of Daniels' condition after his hospitalization in August, 1983 also lacks any medical opinion regarding limitations placed upon Daniels.
 
 
 28
 In sum, after complete review of all pertinent evidence, we find that there is substantial evidence to support the Secretary's finding that Daniels failed to carry his burden of showing a severe impairment by objective medical evidence. Daniels' testimony of pain is subject to conflicting objective medical evidence and is discounted by his employment through June of 1982. While pain may be so severe that it is disabling, see Glass v. Secretary of Health, Education and Welfare, 517 F.2d 224, 225 (6th Cir. 1975), we do not lightly discard an ALJ's determination of credibility as to testimony of pain. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). In the present case, we are unpersuaded that we should discard the ALJ's determination that Daniels' pain is not supported by medical evidence and is not disabling. There is a total lack of medical opinion or evidence as to the impact Daniels' ailments had on his ability to perform basic work skills. $Daniels also contends, based on Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979), that it was reversible error for the ecretary to not indicate the weight assigned to each item of evidence presented on Daniels' behalf. Although this decision stands for the proposition asserted, this Circuit has never adhered to that policy in its review of the Secretary's decisions. Instead, we have stated that the substantiality of the evidence supporting the Secretary's decision must be based on the record as a whole, taking into account evidence which detracts from as well as that which supports the claimant's case. Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978); Hephner v. Matthews, 574 F.2d 359 (6th Cir. 1978). A review of the Appeals Council's decision not to review Daniels' case reveals that it considered all evidence of record as well as the additional evidence submitted subsequent to the ALJ hearing. Therefore, Daniels' claim is without merit.
 
 
 29
 In addition, we find no merit in Daniels' final contention that the Secretary was required to supply evidence of specific work which Daniels could perform. As previously stated, a claimant must first establish through the sequential evaluation process that he is unable to perform his past relevant work before the burden shifts to the Secretary to show specific jobs the claimant can perform. Garner, 745 F.2d at 387. Daniels failed to estabilish that his impairment was severe, thereby ending the sequential process before the burden shifted.
 
 
 30
 Having concluded that substantial evidence supports the Secretary's decision to deny disability benefits to Daniels, we accordingly AFFIRM the judgment of the district court.