**Carmelina SCOTT o/b/o Marcus SCOTT,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security.**

**No. CIV. SKG–02–2741.**

United States District Court, D. Maryland.

Aug. 10, 2004.

Paul Rodney Schlitz, Jr., Jenkins Block and Associates PC, Baltimore, MD, for Plaintiff.

John Walter Sippel, Jr., Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

GAUVEY, United States Magistrate Judge.

■ Presently pending before this Court are Cross–Motions for Summary Judgment concerning the Commissioner's denial of the plaintiff's claim for Supplemental Security Income ("SSI") payments (children's benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. (R. 14–26). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court **GRANTS** the plaintiff's Motion for Summary Judgment and **DENIES** the Commissioner's Motion, and **REMANDS** the case to the Commissioner for proceedings consistent with this opinion.

Carmelina Scott ("plaintiff") filed an application for SSI on behalf of her son, Marcus Scott ("claimant"), on February 29, 2000, alleging disability due to asthma since January 1, 1995. (R. 57–59, 61). A hearing was held on May 15, 2001; whereafter, the Administrative Law Judge ("ALJ") denied plaintiff's claim in a written decision dated August 30, 2001. (R. 14–26). The ALJ concluded that claimant was not under a disability, under § 416.920(f) of the Social Security Act. (R. 25). Specifically, at Step Two of the Children's Benefit Analysis,[1] the ALJ determined that claimant suffers from asthma and Attention–Deficit Hyperactivity Disorder ("ADHD"), but neither of the impairments nor the combination of the impairments cause more than minimal functional limitations. (R. 25). Therefore, the ALJ concluded that claimant's impairments are not severe. (R. 25). On June 28, 2002, the Appeals Council denied plaintiff's request for review, thus making this case ripe for judicial review. (R. 5–6).

■ The Commissioner's decision must be upheld if supported by substantial evidence which is more than a scintilla, but less than a preponderance, and sufficient to support a conclusion in a reasonable mind. *See* 42 U.S.C. § 405(g) (1998); *see also King v. Califano*, 599 F.2d 597 (4th Cir.1979); *Teague v. Califano*, 560 F.2d 615 (4th Cir.1977); *Laws v. Celebrezze*, 368

---

1. According to 42 U.S.C. § 1382(a)(3)(c), a child under eighteen is considered "disabled" if he has:

 "[A] medically determinable physical or mental impairment or combination of impairments that causes marked or severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months."

In making this determination, 20 C.F.R. § 416.924(b)-(d) provides that the ALJ must engage in a three step sequential analysis determining: (1) whether the child is engaged in substantial gainful activity; (2) whether the child suffers impairments or a combination of impairments that is severe; (3) whether the child's impairments meet, medically equal or are functionally equivalent in severity to any of the listed impairments delineated in 20 C.F.R. Prt. 404 Subpt. P, App. 1.

F.2d 640 (4th Cir.1966). This Court may not weigh conflicting evidence, determine credibility, or substitute its judgment for the Commissioner's. *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Although deferential, this standard of review does not require acceptance of a determination by the Commissioner which applies an improper standard, or misapplies the law. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g) (1998); *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

## I. *Factual Background*

Claimant is a thirteen-year-old male, born on November 3, 1990. (R. 71). Claimant lives with his mother, one brother and sister. (R. 170). At the time of the ALJ hearing, claimant was enrolled in the fifth grade at Dr. Carter G. Woodson Elementary School, a public school in Baltimore City. (R. 154). Claimant has never worked. (R. 69).

On February 29, 2000, plaintiff filed an initial Children's Disability Report, alleging that her son became disabled due to asthma on January 1, 1995. (R. 61). Plaintiff indicated that claimant required hospitalization at Harbor Hospital for an asthma attack in December 1999. (R. 63). Plaintiff reported that asthma limits her son's ability to walk and run. (R. 61). To control his asthma, claimant takes Albuterol through an inhaler and a nebulizer. (R. 65). Plaintiff further specified that claimant requires his nebulizer treatment four times a day. (R. 62).

In the accompanying Children's Function Report, plaintiff reiterated that claimant's asthma affects his endurance and indicated that claimant has other physical and mental limitations. Plaintiff stated that her son has difficulty completing a full spoken sentence and that it is difficult to understand claimant when he speaks. (R. 73). Also, plaintiff reported that claimant often prints letters backwards and cannot add or subtract numbers over 10. (R. 75). Plaintiff noted that her son's tendency to fight with his peers prevents him from making new friends. (R. 77). While he is able to take care of most of his personal needs, plaintiff stated that claimant is unable to comb his hair. (R. 78). Lastly, plaintiff noted that claimant has poor concentration and will only complete his homework and chores under constant supervision. (R. 79).

Plaintiff completed a Daily Activities Questionnaire on March 16, 2000. (R. 83–85). Plaintiff reported that her son's asthma affects his ability to breathe early in the morning and throughout the night. (R. 83). As a result, claimant often requires his nebulizer treatment in the mornings before school. (R. 83). While claimant enjoys engaging in certain physical activities, such as football and basketball, he experiences a shortness of breath during these activities and, therefore, cannot participate regularly in gym class at school. (R. 85, 83). In addition, plaintiff noted that claimant believes that the other kids in his class are smarter than he is, because he has difficulty spelling and reading in school. (R. 83–84). Plaintiff reported that her son frequently starts fights while playing with his older brother and his neighborhood friends. (R. 84–85). Despite this aggression, plaintiff stated that her son behaves well around her and his school teachers. (R. 84).

On July 5, 2000, claimant visited Dr. Barry Reiner, M.D., a doctor at Harbor Hospital, for a consultative examination. (R. 107). Dr. Reiner noted that claimant was diagnosed with asthma at the age of two. (R. 107). Dr. Reiner also noted that claimant had been hospitalized for his

asthma on two prior occasions, but the most recent hospitalization occurred two years prior to his examination. (R. 107). Dr. Reiner acknowledged that claimant is medicated with Albuterol to control his asthma, as well as daily doses of Singulair and Flovent for his allergies. (R. 107). While claimant will require ongoing medical treatment and access to medications, Dr. Reiner concluded that claimant's asthma was "generally well controlled" on his current regimen. (R. 108). Moreover, Dr. Reiner determined that claimant is able to participate fully in activities of daily living. (R. 108).

Dr. Reiner also addressed claimant's functional and behavioral limitations. Based on plaintiff's complaint that claimant was performing poorly in school, Dr. Reiner speculated that claimant "seems to have [a] learning disability and perhaps attention-deficit disorder." (R. 108). However, Dr. Reiner added that claimant would require a full neurodevelopmental assessment to determine his cognitive and communicative abilities. (R. 108).

On July 31, 2000, a non-consultative physician from the Disability Determination Services ("DDS") completed a Childhood Disability Evaluation Form to determine the extent of claimant's impairment. (R. 109–111). The physician confirmed Dr. Reiner's conclusion that claimant's asthma is well-controlled with his medication. Accordingly, the physician concluded that claimant's impairment is not severe. (R. 111).

On August 23, 2000, plaintiff submitted a Reconsideration Disability Report to address a change in her son's condition. (R. 94). In this report, plaintiff stated that her son increasingly complained of chest pains and that he could not walk as far as he used to without experiencing shortness of breath. (R. 94, 96). Plaintiff further stated that claimant's nebulizer treatment no longer prevents claimant's chest pains and breathing difficulty. (R. 94). In addition, plaintiff indicated that claimant has a history of lead poisoning and currently has a learning disability.[2] (R. 94).

Plaintiff completed a second Daily Activities Questionnaire on September 20, 2000. (R. 86–88). This questionnaire echoed many of plaintiff's observations from the March 16, 2000 questionnaire. Plaintiff emphasized that her son experiences shortness of breath from walking one block and tires when he walks up the stairs in his home. (R. 86). According to plaintiff, claimant frequently complains of chest pains and now requires his nebulizer treatment every four or six hours. (R. 88, 90). While claimant is still able to play outside with his friends, plaintiff reported that claimant's asthma limits his participation in outdoor activities to one or two times per week. (R. 86).

On October 10, 2000, a second non-consultative physician from DDS completed a Childhood Disability Evaluation Form to address plaintiff's Reconsideration Disability Report. (R. 133–35). The physician noted that claimant's lungs were clear and that claimant's asthma is well-controlled with his medication. (R. 135). Accordingly, the physician concluded that claimant's asthma is not severe. (R. 135).

Based on Dr. Reiner's suggestion that claimant undergo a full neurodevelopmental assessment, plaintiff sought treatment with Orlando Davis, M.D., a psychiatrist with Urban Behavioral Associates, on August 17, 2000. Plaintiff's presenting complaint was that claimant is unable to stay focused on his school activities and exhibited poor concentration. (R. 166). In his

---

**2.** At the age of two, Shirlene Williams, M.D., a pediatrician at Cherry Hill Medical Center, also reported that claimant had a history of lead toxicity, with the highest lead level measured at 16.6 Mcg/dl on November 30, 1992. (R. 106).

initial evaluation, Dr. Davis reported that claimant does not have any ongoing behavioral problems and maintains good relationships with his family, classmates and playmates. (R. 170). Moreover, Dr. Davis observed that claimant seems well-developed and well-nourished, behaves appropriately and cooperatively, and operates with a coherent and goal-directed thought process. (R. 171–72). Dr. Davis estimated that claimant's intellectual functioning is average. (R. 173). Based on plaintiff's complaint and his own observations, Dr. Davis concluded that claimant suffers from ADHD. (R. 174). In his clinical assessment, Dr. Davis reported claimant's ADHD as "severe" and evaluated his Global Assessment of Functioning ("GAF") score at 53.[3] (R. 174)

On September 16, 2000, Dr. Davis completed an Areas of Development and Functioning evaluation form for the claimant. (R. 139–143). The form indicated that claimant had "severe limitations"[4] in three areas: the ability to comprehend and produce language, to learn, understand, and solve problems through intuition and acquired knowledge, and to maintain concentration and pace in the completion of tasks. (R. 140, 142). Dr. Davis reported that claimant had "marked limitations"[5] in several areas: the ability to retain and recall information, to request help and meet personal needs, to express feelings and ideas, to use gross and fine motor skills, to form relationships, to interact and respond appropriately to authority, to take care of one's self, to adhere to medication regimens and to follow safety precautions. (R. 140–42). According to the report, claimant did not have a limitation in his ability to respond appropriately to stimuli. (R. 143). In addition, claimant's "functional age" was nine years old with regard to his ability to maintain personal hygiene, proper nutrition, sleep and health habits.[6] (R. 142).

Dr. Davis submitted progress notes for three sessions with the claimant. (R. 144–45). On January 16, 2001, Dr. Davis noted that the plaintiff complained that her son was starting fights with his twelve-year old brother. (R. 145). In addition, Dr. Davis reported that claimant would not complete his homework independently, but was still doing well in school. Dr. Davis indicated that, as of this session, claimant had taken Dexadrine to control his ADHD for one and a half months. (R. 145).

The March 2, 2001 progress notes indicated that plaintiff complained that the claimant was not taking his medication. (R. 144). In addition, plaintiff complained that her son was doing "mean things" to the dog, including poking the dog with a knife and shocking the dog with electricity.

3. The GAF score is for reporting the clinician's judgment of the individual's level of functioning. The GAF score is useful in planning treatment and measuring its impact, and in predicting outcome. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM–IV").

A GAF score of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or social functioning (e.g. few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) ("DSM–IV").

4. "Extreme limitation" is defined as "functioning as one-half chronological age or less" or "no meaningful functioning in a given area." (R. 139).

5. "Marked Limitation" is defined as a limitation that is "more than moderate and 'less than extreme.'" (R. 139).

6. "Functional Age" is defined as "the age at which the child is functioning in a given area, as opposed to the child's chronological age." (R. 139). Claimant was nine years old at the time of the examination.

(R. 144). At this time, claimant was still taking Dexadrine for his ADHD. (R. 144).

On March 23, Dr. Davis reported that claimant did not experience any side effects from the Dexadrine. (R. 144). Dr. Davis observed that his play was energetic. (R. 144). In addition, Dr. Davis noted that claimant was "doing well in school." (R. 144).

On April 6, 2001, Dr. Davis completed a Childhood Disability Evaluation Form. (R. 136). In this form, Dr. Davis indicated that claimant had no "extreme limitations" and had "marked limitations" in two domains: attending to and completing tasks, and interacting and relating with others.[7] (R. 136). The form further stated that claimant had no limitation or "less than marked" limitation in the four remaining domains. (R. 136–37).

On May 15, 2001, plaintiff testified at the ALJ hearing.[8] Plaintiff reported that claimant is still unable to participate in physical activities, such as football, basketball, and gym class, and that he often has to rest after playing outside for an hour. (R. 156). In addition, plaintiff stated that her son experiences asthma attacks every two or three months and is medicated with Provental to prevent these attacks. (R. 152, 158). Moreover, claimant requires his nebulizer treatment once a month. (R. 158).

Plaintiff's testimony at the hearing focused primarily on claimant's ADHD. Plaintiff stated that her son has difficulty following directions and attending to tasks, such as cleaning his room and finishing his homework. (R. 151–52). As a result, claimant's ADHD frustrates his ability to understand and independently complete his school assignments. At the time of the hearing, claimant was in the fifth grade and has never attended special education classes.[9] (R. 153). However, plaintiff stated that she did not believe that her son would pass the fifth grade, because the claimant had failing grades in his math and reading courses. (R. 154).

Plaintiff also indicated that her son continued to exhibit behavioral problems at home. (R. 152). Plaintiff reported that her son has a propensity to start fights with his siblings and other children in the neighborhood out of frustration when things he do not go his way. (R. 155–56, 160–61). However, claimant has never seriously hurt any of his friends. (R. 155–56). Despite the reported behavioral problems at home, claimant has not encountered similar behavioral difficulties at school; claimant has been suspended from school for fighting only once, two years prior to the hearing. (R. 154). Aside from this isolated incident, claimant's teachers have never approached plaintiff about his behavior at school. (R. 154).

## II. *Analysis*

Plaintiff argues in her Motion for Summary Judgment that the ALJ erred at Step Two of the inquiry, and that the ALJ's determination that claimant is not disabled is not supported by substantial evidence. (Paper No. 23 at 4). Specifically, plaintiff makes three arguments on appeal. First, plaintiff argues that the ALJ accorded improper weight to Dr. Davis'

---

7. The form defines "marked limitation" as when an impairment "interferes seriously with the child's ability to independently initiate, sustain, or complete domain-related activities." (R. 138).

8. Claimant did not appear to testify at the ALJ hearing, because his asthma was "acting up."

(R. 151). Instead, plaintiff testified on behalf of her son. (R. 148).

9. Claimant's school records indicate that claimant passed all of his fourth grade courses except for composition and spelling. (R. 93). Claimant satisfactorily completed these courses in summer school. (R. 92).

medical opinions. (Paper No. 23 at 9). Second, she asserts that the administrative record was deficient at the time of the ALJ's decision, because the ALJ did not consider all available medical reports from Dr. Davis and the ALJ should have ordered a consultative examination for claimant's ADHD. (Paper No. 23 at 8–9). Third, plaintiff argues that the ALJ erred by finding that the claimant did not demonstrate a disability for a period of twelve months, because the record demonstrates that claimant began treatment on August 17, 2000, over one year before the ALJ's decision on August 31, 2001. (Paper No. 23 at 7).

The defense counters that there was substantial evidence in the record to support the ALJ's determination that claimant was not disabled. (Paper No. 41 at 17). The defense also contends that the ALJ properly accorded little weight to Dr. Davis' opinions, because his opinions merely formalized the subjective complaints of the plaintiff. (Paper No. 41 at 25).

■ Upon review of the record, this Court finds that it cannot perform a meaningful review of the record without an understanding of the weight attributed to the additional evidence submitted by the plaintiff after the ALJ issued her decision. Accordingly, the undersigned does not address the issues raised by the parties.

Although not addressed by either party in their memoranda, this Court necessarily raises the issue *sua sponte*. A reviewing court cannot properly discharge its judicial review function without an evaluation and explanation of all material evidence. Therefore, this Court finds that it cannot determine whether the ALJ's decision to deny benefits to claimant is supported by substantial evidence without an adequate explanation of the Appeals Council's evaluation of the new evidence.

■ The Appeals Council must consider evidence submitted with a request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir.1991) (en banc) (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir.1990)); *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).[10] Although, in making their decision about whether to grant review, the Appeals Council must consider additional evidence that is new and material, the Appeals Council need not grant review unless "it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b).

■ If after making such a determination, the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *Wilkins*, 953 F.2d at 96; *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Russell v. Bowen*, 856 F.2d 81, 83–84 (9th Cir.1988); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994); *see also* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.955, 416.1555. Thus, if the Appeals Council has declined to grant review, this Court only reviews the ALJ's decision, as it is the final decision of the Commissioner. *Wilkins*, 953 F.2d at 96; *accord Eads v. Secretary of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir.1993)(J. Posner)(giving an informative explanation of the rationale for

10. Unlike a plaintiff seeking remand on the basis of new evidence under 42 U.S.C. 405(g), a claimant requesting review by the Appeals Council must not establish good cause for failing to present the evidence earlier. *Wilkins,* 953 F.2d at 96, n. 3.

lack of review of Appeal's Council's decision).

At the ALJ hearing, plaintiff's attorney stated, and the ALJ agreed, that the record did not contain all available medical reports from Dr. Davis. (R. 162). On August 21, 2001, plaintiff submitted Dr. Davis' records from August 17, 2000 and September 16, 2000. (R. 165). Although plaintiff submitted these additional documents to the ALJ prior to her decision on August 31, 2001, the ALJ did not incorporate them into the record, and therefore did not consider the additional medical reports.[11]

On June 28, 2002, the Appeals Council issued an order stating that it had received evidence "in addition to that which was before the Administrative Law Judge" and that it incorporated that additional evidence into the administrative record. (R. 7). By incorporating this evidence into the record and considering it upon request for review, the Appeals Council determined that this evidence was both new and material, and related to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). On June 28, 2002, the Appeals Council declined plaintiff's request for review. (R. 5). In its decision, the Appeals Council concisely stated, without further explanation, that it had considered the entire record, including the post-hearing evidence, and did not find cause to disturb the ALJ's decision.[12] (R. 5).

The Appeals Council's denial of review without further explanation of the additional evidence creates a dilemma for the reviewing court. Under the regulations, this Court does not have the jurisdiction to review the actions of the Appeals Council, because the denial of review made the ALJ's decision final. 20 C.F.R. § 404.981; *Wilkins*, 953 F.2d at 96. Therefore, this Court may review only the ALJ's decision to deny plaintiff's request for benefits. However, that review must include the new and material evidence that the Appeals Council incorporated into the administrative record. *Wilkins*, 953 F.2d at 96. Thus, this Court faces the task of reviewing a record that contains evidence not seen, and therefore not evaluated, by the ALJ.

There is a difference of opinion among courts as to whether or not the Appeals Council must articulate its assessment of new evidence. Some courts find that the Appeals Council is not obligated to discuss its treatment of additional evidence submitted after the ALJ issues its decision. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992); *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir.1991). These courts assert that the language of the regulations does not require the Appeals Council to articulate its consideration of new evidence. *Browning*, 958 F.2d at 822. Moreover, these courts emphasize that when the Appeals Council denies review, the regulations allow the reviewing to court review only the actions of the ALJ. *Id.* at

11. Although plaintiff's letter has a time-stamp indicating that it was received on August 21, 2001, the ALJ did not acknowledge the receipt of this letter or the accompanying medical reports in her opinion. To the contrary, the ALJ stated that she reviewed and considered medical reports dating from September 16, 2000 to April 6, 2001. (R. 24). Thus, it appears that this information was never before the ALJ and only considered by the Appeals Council.

12. The Appeals Council stated that the "Appeals Council has also considered the contentions raised in your representative's letter...as well as the additional evidence identified on the attached Order of the Appeals Council, but concluded that neither the contentions nor the additional evidence provides a basis for changing the ALJ's decision." (R. 5).

822–23 (finding that "[j]urisdiction to review whether the Appeals Council has complied with the procedural requirements of the regulations does not imply jurisdiction to review the Appeals Council's non-final, substantive decision to deny review"). Contrarily, a number of courts have recently found that an explanation from the Appeals Council is necessary for a reviewing court to properly perform its statutory function. *Hawker v. Barnhart,* 235 F.Supp.2d 445, 452 (D.Md.2002); *Harmon v. Apfel,* 103 F.Supp.2d 869, 873 (D.S.C.2000); *Riley v. Apfel,* 88 F.Supp.2d 572, 579 (W.D.Va.2000). These courts assert that a reviewing court cannot properly review an administrative record without an understanding of the weight assigned to all evidence. *Hawker,* 235 F.Supp.2d at 449. While there is no published Fourth Circuit authority on this issue,[13] this Court finds that the more appropriate course for a reviewing court is to remand the case to the Commissioner for an articulation of its assessment of the new evidence.

In the instant case, the plaintiff submitted additional medical reports from Dr. Davis dating August 17, 2000 and September 16, 2000. Some of the additional evidence is duplicative of evidence already contained in the record, such as plaintiff's subjective complaints regarding her son's limitations. (R. 168–70). However, the additional evidence also consists of Dr. Davis' observations from his examination of the claimant. (R. 171–73). After this examination, Dr. Davis concluded in the additional evidence that claimant suffered from ADHD. (R. 174). Moreover, Dr. Davis characterized claimant's disability as "severe" and assigned him a GAF score of

53. (R. 174). Therefore, this new evidence is potentially contradictory to the ALJ's conclusion that claimant's impairments are not severe.

To affirm the decision of the ALJ without an explanation from the Appeals Council, this Court would have to determine that this new evidence supports the conclusion that there is substantial evidence to uphold the ALJ's denial of benefits. *Browning,* 958 F.2d at 822–23. Since there is no discussion of this evidence, or weight attributed to it by the Appeals Council, this Court would be in the position of weighing and evaluating the additional medical reports. However, that is not the function of this Court. The Fourth Circuit has consistently held that a reviewing court is not permitted to weigh evidence; that function is within the province of the Commissioner. *See Hays,* 907 F.2d at 1456; *Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972). Thus, this Court should not review evidence without an understanding of how the ALJ or the Appeals Council weighed and evaluated that evidence.

 This Court instead agrees with those courts that find that a reviewing court cannot properly engage in a meaningful review of the record without some indication of the weight assigned to new evidence. By incorporating the new evidence into the record, the Appeals Council made the determination that Dr. Davis' medical reports were both new and material. However, the Commissioner is required to explain the weight and effect of material evidence when benefits are de-

---

**13.** There are two conflicting unpublished Fourth Circuit opinions on this issue. In *Hollar v. Commissioner of Soc. Sec.,* 1999 WL 753999 (4th Cir.1999), the court rejected a claim that the appeals council must explain its treatment of additional evidence, because the regulation addressing additional evidence does not direct the Appeals Council to do so. See 20 C.F.R. § 404.970(b). However, in *Thomas v. Commissioner of Soc. Sec.,* 24 Fed. Appx. 158, 2001 WL 1602103 (4th Cir.2001), the Fourth Circuit found that the Appeals Council must indicate the reasons for discounting additional evidence.

nied. 42 U.S.C. § 405(b)(1); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983); *Stawls*, 596 F.2d at 1213. This principle applies even where new evidence appears before the Appeals Council for the first time. *Hawker*, 235 F.Supp.2d at 447; *see also Riley*, 88 F.Supp.2d. at 579–80 (noting that "[w]hen this Court is left in the dark as to how the Appeals Council treated the new evidence, a meaningful review is impossible"); *Harmon*, 103 F.Supp.2d at 874 (finding that a reviewing court "is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded new, additional evidence"). The Appeals Council stated that it considered the additional reports from Dr. Davis, but did not explain its assessment of this new evidence. (R. 5). Without a proper understanding of the weight attributed to this evidence by the Appeals Council, this Court cannot properly perform its statutory function of determining whether the ALJ's decision is supported by substantial evidence. *Hawker*, 235 F.Supp.2d at 452; *Harmon*, 103 F.Supp.2d at 874.

As explained above, the absence of weight assigned to the new evidence is troublesome. Because the Appeals Council chose to incorporate Dr. Davis' additional reports into the administrative record, this Court is obliged to review the entire record, including the additional evidence. *Wilkins*, 953 F.2d at 96. However, for this Court to engage in a meaningful review, this Court must understand the weight attributed to all material evidence. *DeLoatche*, 715 F.2d at 150 (holding that "[j]udicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator"). Accordingly, the undersigned remands this case for the Commissioner to articulate her assessment of the additional evidence.

III. *Conclusion*

For the foregoing reasons, this Court **REMANDS** this case to the Commissioner for proceedings consistent with this Memorandum Opinion. Accordingly, the Court Orders that defendant's Motion for Summary Judgment be **DENIED**.